"The tract of land that I now live on, lying on the Catawba River, containing 300 acres, and also fisheries, its my will and pleasure that my executors hereafter named do within six months after my decease cause the aforesaid tract of land to be sold to the highest bidder he then directsthe notice of the sale, and the terms, and the security to be taken; and my will is that the money accruing from the sale of the land shall be laid out in purchasing shares in the State Bank of North Carolina, or purchasing shares in the United States Bank, and the *Page 145 
profits to go towards paying a minister of the Gospel who shall preach at the Seceding Congregation Meeting-House, called Gilead, in said county, on the great road leading from Charlotte to Beattie's Ford, the party calledthe Associate Seceding Party."
That the plaintiffs had been duly elected trustees of the Associate Seceding Congregation, who they contended were entitled to the use and occupation of Gilead Meeting-House equally with the Associate Reformed. But if in this they were mistaken, they stated that they had procured a conveyance to them, as Trustees of the Associate Seceding Congregation of Gilead, of one acre of land, and were about to erect upon it a house for the use of that congregation, within six poles of the meeting-house described by the devisor in his will.
The prayer of the bill was for an account, and that the charity created by the will might be established, and the interest of the fund be paid to the plaintiffs to support a minister to preach in the old meeting-house, or that the trusts of the will might be executed, cy pres, by appropriating the interest of the fund to the support of a minister to preach in the new meeting-house.
The plaintiffs John Henderson and others were the heirs at law and next of kin to William Henderson. In their bill they set forth the above clause of their ancestor's will. They averred that the land on which the meeting-house at Gilead was built belonged to the (278) Associate Reformed Presbyterians; that the Associate Seceding Presbyterians did not exist as a body at Gilead, and had no right to the use of the house. They insisted that there was no possibility of carrying the devise into effect, and prayed for an account of the trust fund, and that the executors might be directed to pay it over to them.
The defendant, the executor of William Henderson, in his answers admitted a sale of the land mentioned in the will, for $7,440, rendered an account, and submitted to any decree by which he would be indemnified and protected.
Replications were filed and testimony taken explanatory of the differences between the Associate Seceding and the Associate ReformedChurch, and of the separate existence of both. Attached to one of the depositions was an exhibit in these words:
"GILEAD CHURCH, July, 1823.
"At a meeting of this Society, agreeably to public notices given for that purpose, Resolved, That this church be newly roofed and securely enclosed, with iron fastenings to the windows, doors, etc., and that this church or meeting-house be kept for the sole and exclusive use of this *Page 146 
congregation and our present pastor, or some minister of the Associate Reformed Synod. And that our present session or elders are authorized and required to have the sole direction of this business."
The cause was argued at June Term, 1827.
This is not a devise to a religious congregation, within either the words or the spirit of the act of 1796 (Rev., ch. 457). The property is not given to the congregation, to be used by them as they may think proper, for their use and benefit, but it is given for a special purpose, in which, to be sure, they are interested, but are (279) not the owners, to wit, to pay a preacher of a certain sect to preach to the congregation called Gilead. They take, therefore, as trustees, or cestui que trusts (which is matter of indifference, the objection not being to the form), for a specific purpose, and are bound to apply the funds to that, and to no other use.
The validity of the devise depends on the question whether the devisees are accountable to any one for the due execution of the trust; for if they are not, it is void, and there is a resulting trust for the heirs at law or next of kin. If there is any one who can compel the due execution of the trust, that is, the proper application of the trust fund according to the directions of the devisor, then it is a valid trust, at least so much of it as is necessary to answer the intent of the founder. If there be more than is necessary for that purpose, the excess results to the heirs at law or next of kin; for we do not, as they do in England, apply it to other objects of a similar kind, by what is called the doctrine of cy pres.
We are relieved from the consideration of the question whether there is in this case any person competent to enforce the due execution of the trust; for we think that those for whose benefit it was intended have refused, and still refuse, to accept the testator's bounty. We certainly cannot impose it on them, for the congregation have the right to employ their own preacher, and to pay him in their own way. The testator has left us no guide to ascertain what is to be done in such an event. Nor do we know, but from conjecture, whether as the congregation, who have the appointment of the minister and the control over the church at Gilead, have refused to accept his bounty, it was his desire that it should be given to a part of the congregation who accord with him in religious sentiments, and who are willing to build another church near to the church at Gilead, and employ the funds in paying a preacher of that *Page 147 
sect directed by the testator. It is very probable that the testator (280) would have directed this, had he foreseen the refusal, as the thing next best to that which he most wished. But he has not said so, and it is out of the power of this Court to speak for him. We cannot dispose of the property of the deceased by undertaking to conjecture what would have been his will, provided he had foreseen what has since happened, which has thwarted his intent as expressed. If I were left to conjecture, I would say such was his will; but my argument to prove it would result in nothing like certainty. It would be this, that as the thing offered to be substituted bears a very strong resemblance to that directed, which cannot be performed, it is probable he would have accepted the substitute, because it comes near to the thing directed. But it may be that every circumstance in which the proposed substitute differs from the original directed may have been the testator's sole object in making the bequest, viz., wish to have a preacher of his tenets to preach to the whole congregation at Gilead, and thereby bring them over to his faith, and prevent the dissemination in that church of what he deemed unsound doctrines. I do not say that most probably this was his intent; it is sufficient if it may have been, or anything else but the precise proposition made by the plaintiffs. If I were left to my own conjectures, I would say that in the events which have happened, the proposition made by the plaintiffs is the thing which he would have directed; for it is fair to presume that his object was the dissemination of the doctrines of his faith; that he selected the church at Gilead as the place of preaching, and the congregation there as the one to be preached to, but that they were pointed out only as the means of effecting the end. But if these means failed, the end was not to be lost, but the next best means, and those bearing the strongest resemblance to those pointed out, should be resorted to. This reasoning is all fair, and, if we were correct in the object, would be satisfactory ground for a decree in favor of the plaintiffs. But when we recollect that we assume the object which he had in view, that it is incapable of proof, for (281) he who only can speak in regard to it has spoken for the last time, by this his last will, to which only we can look for his intent, and on this subject that he is silent, we must remain in ignorance of his intent further than he has declared it, and this furnishes only ground of conjecture, on which we cannot act.