ASHEVILLE DIVISION No. 15, SONS OF TEMPERANCE, et als. v. ASTON.

*Corporation—Forfeiture of Charter—Deed—Ejectment.*

1. A deed from an individual to a corporation will be good and pass the title to the land, if it clearly appears from the deed itself what corporation was intended, although a mistake or omission in the corporate name may have occurred, and this rule is not changed by the fact that at the time of executing the deed, the grantor was ignorant that the grantee was a body corporate.

2. If lands are conveyed to a corporation aggregate, it will, from the nature of such corporations, be understood as a fee without any words of limitation.

3. Although the existence of a corporation be limited to a certain number of years, yet it is capable of holding estates in fee.

4. A corporation, chartered for the purpose of promoting temperance, does not forfeit real estate which it has purchased, because it ceases to pursue the objects for which it was incorporated.

5. A corporation cannot endure longer than the time prescribed by its charter, and no judicial proceedings are necessary to declare a forfeiture for such a cause, but for any other cause of forfeiture a direct proceeding must be instituted by the sovereign to enforce the forfeiture, and it cannot be taken advantage of in any collateral proceeding.

6. A receiver, appointed under the act (The Code, sec. 670), to wind up the affairs of corporations, can proceed to collect in the assets, and to prosecute and defend suits, after the corporation has ceased to exist by the expiration of its charter.

7. The second story in a house, when held separately, may be recovered in an action of ejectment.

(*Deaf and Dumb Institute* v. *Norwood*, Busb. Eq., 65 ; *Ryan* v. *Martin*, 91 N. C., 464 ; *State* v. *Rives*, 5 Ired., 297 ; *Elizabeth City Academy* v. *Lindsey*, 6 Ired., 476 ; *Attorney General* v. *Railroad Company*, Ibid, 456 ; *Von Glahn* v. *DeRosset*, 81 N. C., 467 ; *Gilliam* v. *Bird*, 8 Ired., 280, cited and approved.)

CIVIL ACTION, heard before *Shipp, Judge,* and a jury, at Fall Term, 1884, of BUNCOMBE Superior Court.

This action, commenced on March 3rd, 1881, is to establish title to and recover possession of the third or upper story of a large brick building, erected by Mont. Patton, on Main street, south of the public square, in the town of Asheville, with the means of access thereto, in the occupation of and claimed by the defendant under a deed from said Patton of later date than that executed by him to the plaintiff.

Only one issue was submitted to the jury, viz:

What was the annual value of the rents and profits of the property sued for, since the defendant has been in possession?

As to the other facts, a jury trial was waived by consent of the parties, and they were tried by the Court, whereupon the Court found the following facts:

About the year 1848 there was a temperance organization in the town of Asheville known as "Asheville Division, No. 15." This organization continued until in January, 1851, when the Legislature of North Carolina passed an act incorporating "Asheville Division, No. 15, of the Sons of Temperance." This act was ratified January 28th, 1851. That the said Asheville Division, No. 15, organized under the act of 1851, and was acting under such charter, when on the 24th day of February, 1854, M. Patton executed and delivered to it his deed of that date for the property sued for. The deed described the vendee as "Asheville Division, No. 15." At the time he executed it, the vendor, while he knew there was a temperance organization in Asheville called "Asheville Division, No. 15," did not know that the organization had been incorporated, and did not know that it had any other name than "Asheville Division, No. 15"; that there was no other "Asheville Division, No. 15," or other temperance organization than the plaintiff corporation in Asheville at that time, and immediately after the execution of the deed the said corporation went into possession of the property and continued to occupy it until the year 1866 or 1867; that on the 21st day of January, 1863, said Patton conveyed to the defendant, E. J. Aston, the lot in the town of Asheville, upon which the building stood, the third story of which is sued for in this action. The deed was in the usual form of bargain and sale in fee, and contained an exception in the following words: "Except the upper story of the Temperance Hall building, which has been conveyed to the Sons of Temperance in the town of Asheville."

On the ...... day of ........ ... ..., 1882, the interest of Mont. Patton in the premises was sold by the sheriff of Buncombe county under an execution on a judgment against him (rendered long after the date of the conveyance above referred to), and one M. E. Parker became the purchaser and received a sheriff's deed therefore, and was permitted to become a party plaintiff in this action, and filed a complaint claiming title to the same property sued for in this action.

At Fall Term, 1883, of the Superior Court of Buncombe county, in an action instituted by J. M. Israel, one of the original members of said Asheville Division, No. 15, Sons of Temperance, against A. T. Summey and others, some of whom were original members of said corporation, A. T. Summey was duly appointed receiver of the effects of said corporation, with power of prosecuting and defending all suits then pending, or which might become necessary for the preservation of the effects of said corporation, and to wind up its business.  By the terms of the decree the power of the receiver was extended for three years from the date thereof.

About the year 1867 the plaintiff corporation ceased to hold its usual meetings, and its regular election of officers, and had no further meeting or election until about a month previous to the commencement of this action, when about eleven of its members (seven constituted a quorum by its by-laws) met and elected officers, but did nothing more.

About the time said corporation ceased to hold its meetings and elect its officers as above found, a new temperance organization under the name of the "Friends of Temperance," was organized in Asheville and continued in existence for some time.

That a Masonic Lodge used the room or hall mentioned, as the tenant of the plaintiff corporation, until about the year 1874.

That shortly before the commencement of this action, one J. M. Israel, one of the original members of the corporation, and claiming to act for it, took possession of the hall and was afterwards ousted by the defendant.

The plaintiff objected to the introduction of all evidence tending to prove that the corporation has forfeited its franchises or corporate rights by non-user or mis-user, but insisted that even if the facts were sufficient to warrant a judgment of dissolution, the existence of the corporation could not be impeached in this proceeding, and could only be inquired into by a proper proceeding instituted by the State for that purpose.

The defendant insisted—

1. That the deed from Patton to "Asheville Division, No. 15," was not a conveyance to the "Asheville Division, No. 15, of the Sons of Temperance."

2. That if it were, that corporation expired on the 28th day of January, 1881, prior to the commencement of this action.

3. That if it did not, its charter rights had been lost by non-user.

4. That the deed from Patton to "Asheville Division, No. 15," conveyed but a life estate, and that upon the dissolution of the corporation for any cause, the property reverted to the defendant Aston, and that even if the said deed conveyed a fee simple, still upon the dissolution of the corporation, without having made a conveyance of the property and leaving no successor, it reverted to Aston.

5. Upon all the testimony of the case, neither of the plaintiffs were entitled to recover anything in this action of the defendant Aston, but that he was the owner in fee of the property and entitled to the possession of the same.

Upon the foregoing statement of facts, His Honor gave judgment for the plaintiffs, the "Asheville Division No. 15, of the Sons of Temperance," and A. T. Summey, receiver, made a party plaintiff at this term of court.

The defendant Aston appealed to the Supreme Court.

*Messrs. Theo. F. Davidson* and *Batchelor & Devereux,* for the plaintiff corporation.

*Mr. Jas. H. Merrimon,* for the defendant.

SMITH, C. J. (after stating the facts as above). The appellant's exceptions grow out of the following asserted propositions:

1. The misdescription of the corporate name of the plaintiff in the deed of Patton renders it inoperative as a conveyance of his title.

2. If effectual for any purpose, it passes only an estate for thirty years, the life of the corporate existence, unless meanwhile disposed of.

3. The estate having been acquired and held under the provisions of the charter, for the special and limited use in the promotion of temperance, could not be retained for another and different purpose.

4. The corporation was voluntarily dissolved in 1867, when it failed to hold meetings, and by elections perpetuate the officers incorporated and to exercise the conferred franchises. And if not, then,

5. The corporate life terminated either in 1881, thirty years after the passage of the act, or in 1884, thirty years after organizing under it.

These propositions maintained in the carefully prepared brief of the counsel of the appellant, we propose to successively examine.

(1) The misnomer.

There had been formed in 1848, and existed when the charter was granted, an association in the town, known as "Asheville Division, No. 15," with its proper officers, who were incorporated by the name of "Asheville Division, No. 15, of the Sons of Temperance," the only difference being in the superadded words "of the Sons of Temperance."

It is very manifest that the latter was intended to take under the deed, and is sufficiently identified by name. There is no *false description*, and even this may be sometimes corrected, but an omission only of a part of the corporate name, not producing any uncertainty as to the party meant.

A grant of land from an individual to a body corporate will be good, "if it can be clearly discovered from the terms of it, what corporate body is intended, though an omission or mistake in the corporate name may have been made." *Grant on Corporations*, 51.

"The name of a corporation frequently consists of several words and an omission or alteration of several of them is not material." *Angell & Ames on Corporations*, sec. 99.

A misnomer does not vitiate, provided the identity of the corporation with that intended by the parties is apparent. *Ibid.*,

*secs.* 185, 234; *Morawetz on Private Corporations*, 181. To the same effect are our own adjudications. *Deaf and Dumb Institute,* v. *Norwood,* Busb. Eq., 65; *Ryan* v. *Martin,* 91 N. C., 464.

In the latter case Merrimon, Judge, speaking for the court, uses this language: "If the name is expressed in the written instrument so that the real name can be ascertained, it is sufficient. * * * A misnomer of a corporation has the same legal effect as the misnomer of an individual."

The result is not affected by the grantor's want of knowledge that the voluntary association had become merged in the corporation, for the deed shows an intent to convey the room to an organic body, and the corporate name meets this requirement, without reference to the information possessed by the grantor. He conveys to "Asheville Disvision, No. 15," then an organized corporate body, and who is meant is demonstrated in the deed itself.

(2) The estate conveyed.

This was clearly an estate of inheritance, if the grantor had such to convey. The absence of the word "successors," following the name of the corporation aggregate, does not in any wise abridge or limit, and was unnecessary. In strictness, while a corporation sole has successors, a corporation aggregate has none, for it continues to exist, one and the same, as the river retains its identity, while the currents of water that form it are continually flowing in and passing out. There is a succession among the constituent members, but none in the corporation itself. *Angell & Ames on Corporations,* sec. 172. The corporation will cease to exist, as such, at the expiration of its prescribed limit of life, and it may sooner by a forfeiture of its privileges enforced by the State, as the life of an individual must terminate in the uncertain future, but each is capable of taking an estate beyond this duration, when the operative words of the conveyance are sufficient to pass it.

"A grant in fee to a corporation created for a term of years," we quote from the same author, "will not be construed to convey

the property for the term of years only." *Angell & Ames on Corporations*, sec. 195; *State* v. *Rives*, 5 Ired., 297–305–309.

(3) The trusts upon which the land is held.

The corporation continued to hold its meetings and elect its officers until 1867, about which time a new temperance association was formed, and thereafter the room was used by a masonic lodge, as tenant of the plaintiff, until the year 1874. Shortly before the institution of this suit, one of the original corporators, acting on its behalf, resumed possession and was afterwards expelled by the defendant. These facts do not sustain the proposition that the trusts had become extinct and the legal estate divested out of the owner. That estate remained in the corporation, and the trusts, if of the nature suggested, capable of being enforced by those interested, or on behalf of the State.

(4 and 5) These may be considered together as involving the question of the time of termination of the corporate life.

It is unquestionably true that a corporation whose term of existence is fixed and limited in the act which creates it, cannot endure beyond the prescribed time, unless prolonged by the same authority, or continued for the purpose of adjusting and closing its business, and no judicial proceedings are required to that end. The expiration of the time ends the life given to the artificial body, as death terminates the life of the natural person.

But an earlier determination of corporate existence, for fraud practiced in procuring the creative act, for an abuse of powers and franchises conferred, for usurpation of others not granted, or for non-use of such as may be possessed, must be enforced, in the name of the State, by proceedings directed by law, as contained in C. C. P., ch. 11, secs. 362 and following, or at the instance of a creditor of an insolvent corporation under sec. 22, ch. 26, *Bat. Rev.*, transferred with some modification to section 694 of *The Code.*

A cause of forfeiture cannot be taken advantage of collaterally or otherwise than by a direct proceeding for that purpose, so that the corporation may be heard in answer.

"The government creating the corporation can alone institute such a proceeding, since it may waive a broken condition of a compact made with it, as well as an individual." *Angell & Ames on Corporations*, sec. 777.

"The sovereign alone," remarks Daniel, Judge, in *E liz. City Acad.* v. *Lindsey*, 6 Ired., 476, "has a right to complain, for if it is an usurpation, it is upon the rights of the sovereign, and his acquiescence is evidence that all things have been rightfully performed. *Atto. General* v. *Railroad*, Ibid., 456.

We do not advert to other methods by which a corporate body may become extinct, such as the death of its members and its supervening disability to exercise its corporate functions, as not pertinent to any inquiries presented in the appeal.

Nor is it very important to determine whether in counting the lapse of time, you begin at the date of the enactment, or of the birth of the organic body under it, or whether the term of the corporate existence expired in 1881 or in 1884, since one general statute, in force at each of those dates, continues the body corporate for three years longer, "for the purpose of prosecuting and defending suits by or against them," and during this interval receivers may be appointed whose powers may be continued as long as the Judge may find it necessary for the settlement of their affairs. *Rev. Code*, ch. 26, §§5 and 6 ; *Code*, §§667 and 668.

The act of 1872–'73 provides in express terms, that when such corporation as is therein referred to, shall expire or be dissolved, or its corporate rights and privilege shall have ceased, *all its works and property* and debts due it shall be subject to the payment of debts due by it, and then to be distributed among the members according to their respective interests, and such corporation may sue and be sued as before, for the purpose of, &c. *Bat. Rev.*, ch. 26, §48.

The same recognition of subsisting corporate indebtedness and the same imposed obligation on the receiver to appropriate funds to their payment, and distribute any excess among the stockholders or members of the corporation, are found in *The Code*, §670.

The operation and effect of this legislation in securing a just and proper administration of the effects and estate of a defunct corporation through an agency appointed by the court, and whose functions are analagous to those of an administrator upon the estate of a natural person deceased, have been so fully discussed in *Von Glahn* v. *DeRosset*, 81 N. C., 467, that we forbear to pursue this branch of the subject further.

In aid of the present action, a proceeding was begun in October, 1883, before the thirty years and those added had expired, from whichever time the count may begin, for the appointment of a receiver, and upon its being made in December following, with full powers under the law, the appointee, A. T. Summey, was admitted at Fall Term, 1884, as a co-plaintiff to prosecute the action. Even if the corporation no longer existed, this reciver or trustee, as he is indifferently designated in the statute (*Code*, §668), can maintain and proceed with the suit to recover the property.

The conveyance of the building by Patton to the defendant in January, 1863, is not only some nine years posterior to that made to the corporation, but it expressly excepts from its operation " the upper story of the Temperance Hall Building, *which has been conveyed to the Sons of Temperance* in the town of Asheville." Here the corporation is designated by the descriptive words omitted in the deed, which point out beyond all doubt, the party to whom he then intended to make the conveyance. Moreover, this reservation shows that no title has vested in the defendant to the property claimed in the suit.

That a house, and even a chamber in the house, resting upon the soil but held separately from it may be recovered in an action of ejectment is decided in *Gilliam* v. *Bird*, 8 Ired., 280.

In every aspect of the case then, we concur in the ruling of His Honor, that the defendant has no title to the property, and the plaintiffs, who have, are entitled to recover possession.

We have been much aided by the researches of counsel.

The judgment is affirmed.

No error.                                                    Affirmed.