THE TRUSTEES OF NEWTON ACADEMY v. THE BANK OF ASHEVILLE.

*Will—Charitable Bequest—Trust—Statute Limitations.*

P., in 1845, bequeathed to the trustees of Newton Academy and their successors $1,000, " which sum is to remain in the hands of my son James and his heirs forever, and the lawful interest to be paid annually by my said son James, his heirs and assigns, to the said trustees, to be by them applied to the payment of tuition money for such poor children " as the trustees might designate, and to secure the payment of said interest the testator directed that it should constitute a charge on the real estate devised to his son James. The interest was paid until 1861, when James died solvent, but his testator became insolvent by the results of the war. He sold the lands charged to divers persons, who have been in open adverse possession since, but no demand had ever been made upon them, or other steps taken by the trustees to secure the fund, until 1884: *Held,*

1. That the bequest was a valid one, and during the life of his son it might have been enforced against the lands charged; after that it was a charge against his personal estate.

2. That the trustees might, within a reasonable time and upon proper application, have had the fund secured for the purposes of the trust, but having neglected for so long a time to enforce any remedies they may have had in that respect, they were barred by the Statute of Limitations.

This is a CIVIL ACTION, which was heard before *Boykin, J.,* at August Term, 1888, of BUNCOMBE Superior Court, upon a case agreed.

" The plaintiff is a corporation, created by an act of the General Assembly in 1845, and duly organized in that year, and has existed and acted as such corporation, under the control and management of a board of trustees, from that time until the present.

" The defendant, the Bank of Asheville, is also a corporation, duly chartered and organized under an act of the General Assembly, and authorized to acquire and hold real estate.

" In the year 1845, one James Patton, being seized in fee of the land hereinafter described, died, leaving a last will and testament, which was duly admitted to probate in Buncombe county, and which contained a clause in the following words, to-wit :

" ' I give and bequeath to the Trustees of Newton Academy, and their successors in office, the sum of one thousand dollars, which sum is to remain in the hands of my son James and his heirs forever, and the lawful interest thereon to be paid annually by my said son James, his heirs and assigns, to the said trustees, to be by them applied to the payment of tuition money for such children of poor parentage as they may deem proper objects in this county, and to the end that payment of the said interest may be properly secured, I desire and direct that it shall constitute a charge upon that

portion of my real estate herein devised to my son James, lying on the southwest side of Main street in Asheville.'

" James W. Patton, mentioned in the foregoing clause as ',my son James,' paid to the trustees of Newton Academy the lawful interest on said sum of one thousand dollars annually, down to the time of his death, in 1861, but no interest has since been paid.   At the time of his death, James W. Patton was solvent, but by reason of the loss of his slave property, occasioned by the result of the war, his estate at the end of the war had become insolvent.   The executors of his will, who were duly qualified immediately after his death, were never called on either for said one thousand dollars or the interest thereon, nor have any proceedings been instituted against them or the heirs of said James W. Patton to recover or secure any portion of said principal sum or the interest thereon.   The heirs of said James W. Patton have not inherited any property from their said ancestor.

" Long prior to his death, and when he was amply solvent, James W. Patton sold and conveyed, for valuable consideration, said land in lots of different sizes to divers persons, under whom the defendants claim,' who had no notice in fact that the same had been charged with or were in any way liable for the payment of the said one thousand dollars or the interest thereon, and the defendants, and those under whom they claim, purchased the lands now occupied and possessed by them, respectively, for full value and without notice in fact of any lien, charge or claim of the plaintiffs or other person, by reason of the matters aforesaid, or other-wise.   And the said defendants and those under whom they claim have been in the open, notorious and uninterrupted adverse possession, under colorable titles and up to known lines and visible boundaries, of said lands for more than seven years, over and above the time during which the Statute of Limitations did not run ; and no claim or demand was made by the plaintiffs, or by any one for them, upon the

defendants or those under whom they claim for any interest upon said one thousand dollars or for any part of said principal sum until just before the bringing of this action.

" It is admitted that although more than one thousand dollars of the money of James Patton went into the hands of his son James W. Patton, as the executor of his will, upon the death of the former in 1845, and the said James W. Patton paid interest on the sum of one thousand dollars, as hereinbefore stated, yet the said one thousand dollars was never in fact set apart for the benefit of the plaintiffs, or other persons, and has not been otherwise in existence since the death of James Patton in 1845.

" The defendants own in unequal portions the lands described in the complaint and on which the plaintiffs claim a lien, and said lands are situate on the southwest side of Main street in Asheville, and are the lands embraced in the clause of James Patton's will, hereinbefore recited. It is agreed that if said lands are subject to a lien or charge in the hands of the defendants for the payment of either the principal or interest thereon, to the plaintiffs, of said alleged legacy of one thousand dollars, and that shall be the final judgment of the Court, the cause shall be retained for an equitable adjustment under the direction of the Court, upon reference or otherwise, of the respective equities between the defendants, growing out of questions referring to the relative values of the land owned by them respectively, by reason of improvements thereon, and other equitable considerations. If the Court shall be of opinion with the plaintiffs upon the foregoing facts, it is agreed that the Court shall declare the lien a charge and also fix and determine the amount of interest, if any, now due, which shall be apportioned among the defendants in accordance with their respective equities, to be hereafter ascertained as hereinbefore provided.

" It is further agreed that the pleadings in this cause shall be deemed to have put in issue all the material facts aforesaid.

" It is further agreed that nothing hereinbefore stated shall be held to exclude the fact of such notice of plaintiffs' alleged equity as the law shall imply from the record of the will of James Patton, but it is admitted that defendants have never had actual notice thereof in fact."

The Court being of opinion with defendants, rendered judgment accordingly, from which plaintiffs appealed.

*Mr. Charles A. Moore,* for the plaintiffs.
No counsel for the defendants.

DAVIS, J.   The endless variety of forms in which the last wills of testators find expression, especially when efforts are made to provide for future and often remote contingencies, will render the construction of wills an ever recurring source of difficulty to Courts.

In the case before us we do not understand that any question was made as to the validity of the gift of $1,000 to the " trustees of Newton Academy," nor is there any question as to the relation that the testator's " son James" sustained to the gift, but the difficulty grows out of that part of the clause which seeks to make the gift perpetual to " his heirs forever," and to *secure the payment of the interest* by a charge upon that portion of the real estate mentioned in the clause.

The trust was a valid one, as is settled by many authorities, and during the life-time of James Patton—the son—the provision in relation thereto could have been enforced against him, and after his death, undoubtedly, the " trustees of Newton Academy" might have had the $1,000 secured in such way and under such orders and decrees of the Court, in respect thereto, as would have given effect to the testator's intention, and secured the *corpus* of the gift and the accru-

ing interest thereon, for the purpose named in the will. Not only so, but an action might have been commenced " at the suggestion of two respectable citizens," and the Court might have made such orders and decrees as were best calculated to give effect to the trust.

Section 2342 of *The Code* (Rev. Code, ch. 18; Rev. Stats., ch. 18; 43 Eliz., ch. 4) enacts that, " when real or personal property may have been granted by deed, will or otherwise, for such charitable purposes as are allowed by law, it shall be the duty of those to whom are confided the management of the property and the execution of the trust, to deliver in writing a full and particular account thereof to the Clerk of the Superior Court of the county where the charity is to take effect, on the first Monday in February in each year, to be filed among the records of the Court, and spread upon the record of accounts," and the section following provides the manner in which a compliance with this duty may be enforced, and while the trust itself is not void, because the objects of it are sufficiently certain (*Griffin* v. *Graham*, 1 Hawks, 96; *State* v. *McGowan*, 2 Ired. Eq , 9; *Miller* v. *Atkinson*, 63 N. C., 537, and cases there cited), and while the Courts would, upon proper application and within a reasonable time, make necessary orders and decrees to give it effect and secure the fund, and this from time to time, and as often as necessity might require; yet, being a gift of money, in the very nature of things, the *method* of giving perpetual effect to it, namely, that it should remain in the hands of his " son James and his heirs forever," attempted to be provided by the testator, must be inoperative, certainly after the death of James. The gift was personal property, held in trust; it did not *descend* to the heirs of James. He was solvent at the time of his death, and his estate did not become insolvent till the end of the war. He died in 1861. No effort was made to secure the principal sum of $1,000; that was lost, and lost, as appears, by the laches of those whose

duty it was, at least, to receive the interest, and to see that the principal was properly secured upon the death of James. In the view we take of it, it is immaterial to consider whether the *principal* sum of $1,000 or only the *interest* constituted a charge upon the land. After the death of James the $1,000 and accrued interest were primarily charges upon his personal estate. Upon the loss of the principal the interest of course ceased. The defendants, and those under whom they claim, were purchasers—not in any sense trustees—and though, after the death of James Patton, it may be that upon a failure of personal assets, they could have been held liable as purchasers, affected by notice of the charge contained in the will of James Patton, through which they had to trace their title; yet, their possession being ".open, notorious and uninterrupted," the plaintiffs were required " to act as upon an asserted adverse title," and having failed to bring the action in time the bar of statute applies. Wood on Limitations, §§ 213 and 200, and note.

Lapse of time may be a bar even against *cestui que trusts*, when by adverse acts the relation of trustee is denied. Perry on Trusts, § 745.

"It is the province of a Court of Equity," says HENDERSON, J., in *Thompson* v. *Blair*, 3 Murph., 583, speaking of the statute of limitations, " to infuse its spirit into their decisions as much as can be done without violating its fundamental maxims."

The case before us is unlike that of *Foscue* v. *Foscue*, 2 Ired. Eq., 321, and many similar cases in which persons deriving title from trustees with *fraudulent* knowledge of *dereliction* of duty on the part of the trustees, are not allowed to set up the *legal* title and possession thereunder as a bar to defeat the person really entitled. See *Taylor* v. *Dawson*, 3 Jones Eq., 86 ; *Blake* v. *Lane*, 5 Jones Eq., 412; *Herndon* v. *Pratt*, 6 Jones Eq., 327.

Here there was no pretence of fraudulent purpose, either on the part of vendor or of the vendees.        Affirmed.