EDWARD W. KEITH, Administrator *c. t. a.* of E. T. Clemmons, v.
MARY P. SCALES, et als.

(Decided April 18, 1899).

*Wills—Charitable Uses—Trusts—Latent Ambiguity—The
Code, Sections 2342 to 2345.*

1. A latent ambiguity as to the *cestui que trust* or as to the trustee
    may be explained by evidence. If the evidence fails to identify
    the *cestui que trust*, the trust fails—but the Courts will not
    allow a trust to fail for want of a trustee, and if necessary, will
    supply one.
2. Devises for charitable uses to institutions to be established, if suf-
    ficiently definite, have always been upheld; and if necessary,
    the courts would hold the fund until incorporation could be
    effected, or would appoint substituted trustees. The whole
    matter of enforcing and controlling private charities is regu-
    lated by Sections 2342 to 2345 of The Code. The Courts take
    special care to enforce them.
3. A charitable use, where neither law nor public policy forbids, may
    be applied to almost anything that tends to promote the well
    being of social man. Neither the doctrine of *cy pres* nor 43
    Eliz., ch. 4, in anywise affects the validity of a devise for such
    purpose in this country.

THIS WAS A CIVIL ACTION brought by the plaintiff as admin-
istrator with the will annexed of E. T. Clemmons, for con-
struction of said will and advice of the Court thereupon insti-
tuted in BUNCOMBE Superior Court and removed by order of
the Court, all parties consenting, to FORSYTH Superior Court,.
and heard at February Term, 1899, before *Allen, J.,* upon the
will and facts agreed as set out in the record.

The question being whether the will of E. T. Clemmons is
valid, what property, if any, passed by said will, and what
person or persons or corporations as trustees take, if any, or

124—32

what persons or persons, if any, take as individuals; or whether the property real and personal, other than specific legacies, and the amount due the widow under the law, descended to the heirs at law and distributees. And upon the hearing the Court rendered the judgment set out in the record, to which judgment the defendants, John H. Hanes, L. C. Hanes, W. P. Hanes, L. J. Rights, L. M. Crosland, H. E. McIver, Mary P. Scales, Sarah J. Dalton, S. E. Anderson, John H. Anderson, Mittie W. Lindsay, Vivian McIver, Emma B. Bryan, Maggie E. McIver, B. F. Crosland, excepted as follows:

The defendants last above named except to the findings and rulings of the Court:

1st. That the Court erred in finding as a fact that the testator, E. T. Clemmons, intended to bequeath and devise his property, and that he did bequeath and devise his property to the Board of Provincial Elders of the Southern Province of the Moravian Church as trustee, for the purposes expressed in said will, and was unwarranted in this finding from the will and upon the facts agreed.

2nd. That the Court erred in adjudicating that the said will is valid and binding in law, in all respects, and in adjudging and directing the administrator with will annexed to account with and pay over to the said Board of Provincial Elders of the Southern Province of the Moravian Church, as such trustee, all funds that have come or may come into his hands as such administrator, and in adjudging that the receipts for such shall be valid vouchers in his hands for such payments, and in adjudging that the said Board of Provincial Elders as such trustee is now the owner of and entitled to immediate possession of all the real estate of which the said E. T. Clemmons died seized, subject to the dower right of the widow.

3rd. That the Court erred in not finding and holding that the so-called Moravian Church hold no power to take and hold said property in trust, or to appoint trustees for the purposes mentioned in the will.

4th. That the Court erred in not holding that the Moravian Church of Salem, N. C., had no corporate existence.

5th. That the Court erred in not holding that the devise for church and school at Clemmonsville was void: 1st, That the same is attempted to be given to a church and school not in existence. 2nd, That a church and school house is directed to be built at a cost not exceeding ten thousand dollars, thereby giving a discretion, without a person or corporation being named, capable of exercising the discretion. 3rd, That 100 acres of land is directed to be bought and allotted one acre each to parties incapable of being designated or capable of enforcing the trust. 4th, That the said will attempts to provide for the education of children of these indefinite persons, to whom the one acre of land is given. 5th, That the paper writing attempts to provide for a house for a Moravian minister and teacher, and is too indefinite in determining who that minister or teacher shall be. 6th. That the provision reciting his intention that his estate shall be used and managed by the Moravian Church, of Salem, to maintain a church or school at or near Clemmonsville, N. C., is too general and indefinite, and fails to point out the beneficiaries, or the means by which they may be ascertained. 7th, That the said Moravian Church is not an incorporation, and is incapable of holding a trust. 8th, That there are no beneficiaries mentioned in said paper writing sufficiently identified that can enforce the trust. 9th, That the power given to the trustees to abolish the church and school makes the devise to them void. 10th, That the estate attempted to be given is a base or qualified fee, and is therefore void. 11th, That

there are no words of conveyance conveying the estate to any one to hold in trust, and it therfore descends to the heirs and distributees.   12th, That the will does not contemplate a charity, for it provides that only the children of each member having one acre of the land be sent to school free of charge "as long as any part of my estate remains to pay the expenses of said church first, then the school," and is not in contemplation of section 2342 of The Code.

And appealed to the Supreme Court.

STATE OF NORTH CAROLINA—FORSYTH COUNTY.

In Superior Court, Febreuary Term, 1899.

E. W. KEITH, Administrator, with the will annexed, of E. T. Clemmons,

*vs.*

MARY P. SCALES, and others.

*Judgment.*

This cause coming on to be heard and being heard upon the record and upon the will of E. T. Clemmons, and upon the facts agreed, as appears from Exhibit "A" attached, a jury trial having been waived by all parties without prejudice, the Court from said facts agreed and from said will, finds the following facts, and reaches the following conclusions of law:

It finds as a fact, that the testator, E. T. Clemmons, intended to bequeath and devise his property, real and personal, subject to the payment of his debts, and the bequests to his wife, and to other legatees mentioned by name in said will, to the defendant, "Board of Provincial Elders of the Southern Province of the Moravian Church, or *Unitas Fratrum*," officially located at Salem, Forsyth County, N. C., a corporation under the laws of North Carolina, as a trustee for the purpose

expressed in said will, and further that he did bequeath and devise said property of said trustee to the ends and for the purposes set forth in said will.   Thereupon it is considered and adjudged, that said will is valid, and binding in law in all respects.

Wherefore it is adjudged that said plaintiff, Administrator, with will annexed, be and he is hereby authorized, and directed, after the payment of the small bequests provided for in said will, and after the payment by him to the widow, Hattie B. Clemmons, of her distributive share (the record showing that she is dissented from the will), and after an allowance for commissions and all legal expenditures, to account with and to pay over to the said defendant, "Board of Provincial Elders of the Southern Province of the Moravian Church, or *Unitas Fratrum*," as such trustee, all funds that have come or may come into his hands, as such administrator, and that the receipt of said corporation shall be a valid voucher in the hands of said administrator, for all such payments as may be made.   And it is further adjudged that the said "Board of Provincial Elders of the Southern Province of Moravian Church, or *Unitas Fratrus*," as such trustee, is now the owner, and entitled to the immediate possession of all the real estate of which said E. T. Clemmons died seized, subject to the dower rights of the widow, Hattie B. Clemmons.

O. H. ALLEN,
*Judge Presiding.*

EXHIBIT "A."

STATE OF NORTH CAROLINA, BUNCOMBE COUNTY.

In Superior Court, July Special Term, 1898.

E. W. KEITH, Administrator of E. T. Clemmons
*vs.*
MARY P. SCALES and others.

*Facts Agreed.*

1. That the "Board of Provincial Elders of the Southern Province of the Moravian Church, or *Unitas Fratrum*," was incorporated by the General Assembly of North Carolina, under the Private Laws, Chapter Thirteen (13), laws of 1876-7, to which reference is made.

2. That the home congregation of Salem is incorporated under the corporate name of "Congregation of United Brethren of Salem" and its vicinity, by Chapter 47, Private Laws of the General Assembly of North Carolina, of 1873-4, page 346, to which reference is made.

3. The Moravian Congregation in North Carolina constitute the Southern Province of the Moravian Church in North Carolina.

Delegates from these congregations meet from time to time in Synod, which legislates for this Province, and elects an executive board, called the "Board of Provincial Elders of the Southern Province of the Moravian Church or *Unitas Fratrum*."

This Board was incorporated by the General Assembly of North Carolina, Chapter 13, Private Acts, 1876-7, and the members then in office and their successors have exercised and performed the functions and powers conferred by said Act,

continuously since that date; it holds, invests and administers any and all funds belonging to this Province; it holds title to the remnant of the 1,000,000 acres of land, originally granted by Lord Granville, and commonly known as Moravian Land; it exercises also the executive authority in spiritual affairs, including the appointment and supervision of all ministers of the Moravian Church in the Province, including the Home Church in Salem—it has aided in the erection of sundry new Churches and Chapels, to which it holds the legal title, and has organized new congregations and supplied them with ministers in Forsyth and other counties; it also has the charge and management of Salem Female Academy, and would have that of any other provincial school; it has an office and all its records in Salem, N. C., and is officially located there with Rt. Rev. Edward Rondthaler as President, and Jas. T. Lineback Secretary and Treasurer. Bishop Rondthaler is at the same time pastor of Salem Congregation.

4. The congregation of United Brethren of Salem and its vicinity—chartered by Acts of Assembly as referred to—embraces and owns the original Moravian Church in Salem, and Chapels erected in Salem-Winston and vicinity. The direction of Spiritual affairs of this congregation is vested in a Board of Elders, and the direction of its temporal affairs is vested in a Board of Trustees, both elected by the adult male members of the congregation. It neither owns nor exercises any control over any property or Church outside of its immediate vicinity, and never has. It has four affiliated Chapels in the town and its suburbs, but the worshipers all belong to the one congregation. This congregation is known as the Salem Moravian Church in the community. The home church of Salem and also the four affiliated Chapels receive their ministers and appointment from the Board of Provincial Elders of the Southern Province of the Moravian Church

or *Unitas Fratrum,* and the Salem Church has no control over the appointment of ministers for any other churches in the Province, nor of any Provincial Schools nor of the spiritual affairs of any other church nor congregation in the Province. The lands held by the Board of Provincial Elders in the community is commonly known as Moravian Land, and the funds loaned are commonly known as Moravian Church money, regardless of the fact as to which corporation such funds belong.

5. The testator was at the time of his death, and had been for a period of about fifty years, a member of the Moravian Church at Salem.

6. There is no Moravian church building or original Moravian congregation or Moravian school building at or in the immediate vicinity of Clemmonsville.

Upon the will and the foregoing facts the defendant "Board of Provincial Elders in the Southern Province of the Moravian Church, or *Unitas Fratrum,*" prays that the property embraced in the will be turned over to it, and the defendants, L. J. Rights, and others, pray that the property be turned over to them, as heirs at law and distributees of E. T. Clemmons.

7. That Clemmonsville is located eleven miles from Salem in Forsyth County.

8. That the value of the estate is estimated from $75,000 to $100,000, consisting of both real and personal estate.

(Jury trial waived without prejudice).

The foregoing facts are submitted to the Court to say from them, whether the will of E. T. Clemmons is valid, what property, if any passes by said will, and what person or persons or corporations as trustee take, if any, and what person or persons, if any, take as individuals with the right in any

party of exception and appeal from any finding or conclusion of law or fact made by his Honor.

WATSON, BUXTON & WATSON,

JONES & PATTERSON,

*Attorneys for Board of Provincial Elders.*

HOLTON & ALEXANDER,

TUCKER & MURPHY,

GLENN & MANLEY,

*Attorneys for heirs at law and distributees of E. T. Clemmons.*

W. R. WHITSON,

*Attorney for Administrator and Petitioner.*

A. H. ELLER,

*Attorney for Heirs and Distributees.*

I, E. T. Clemmons, of Asheville, North Carolina, being of sound mind, but knowing the uncertainty of death, deem it proper to make a will, and accordingly do make this my last will and testament. It is my will that all my just debts be first paid and discharged by my administrator out of my estate as soon as conveniently. Then I desire my wife, Hattie, be provided for that she may have a comfortable living from my real estate. Prefer a guardian for her, she, guardian and Court to agree on property for her for life, and at her death to be used as hereafter requested. I desire, should she and guardian think any property best to sell, they may make sale, such as our Court consider legal, and turn the proceeds over to Church as hereafter named. After this I will and bequeath to my beloved aunt, Mary P. Scales, of Greensboro, if living, $200.00. After this I will and bequeath to Lewis C. Hanes, of Lexington, $100.00. Also to Addie Wheeler, of Winston, wife of W. H. Wheeler, $100.00. After the above then I will and bequeath all the rest of my estate including my wife's, at her death, for a Moravian Church and

School at my native town, Clemmonsville, Forsyth County, N. C. I desire the Moravian Church, of Salem, appoint proper persons to purchase one hundred acres of land in or near Clemmonsville. To first erect a substantial church of brick, not to exceed in cost $10,000, a school building not to exceed in cost $10,000, and a comfortable house for the entire use of a Moravian minister and teacher. I desire each member of said church have a lot of one acre of this land purchased at $1.00 each, as far as the land goes, and his children to be sent to school free of charge as long as any part of my estate remains to pay the expenses of said church first, then school. To be managed and controlled by the church of Salem, N. C. It is my intention that all my estate except as before stated, be used and managed by the Moravian Church, of Salem, to maintain a church and school at or near Clemmonsville, N. C., and when, if ever, abolished then to go to my nearest living relatives. In witness whereof I hereto put my hand and seal, and publish this to be my last will and testament.

E. T. CLEMMONS, *(Seal).*

March 10th, 1895.

*A. H. Eller* and *Holton & Alexander,* for appellant.

*Watson, Buxton & Watson; Jones & Patterson,* and *W. R. Whitson,* for appellees.

CLARK, J. This proceeding is brought by the administrator with the will annexed of E. T. Clemmons against his heirs at law, next of kin, and devisees to have the will proved in solemn form, and for a construction of the same. He died childless. After a devise to his widow, which is eliminated from our consideration by reason of her having dissented, and three small bequests to relatives, which are not contested, the testator devised and bequeathed his estate, estimated at $100,000, as follows:

"After the above then I will and bequeath all the rest of my estate, including my wife's, at her death, for a Moravian Church and School in my native town, Clemmonsville, Forsyth County, N. C.    I desire the Moravian Church, of Salem, appoint proper persons to purchase one hundred acres of land in or near Clemmonsville; to first erect a substantial church of brick, not to exceed in cost $10,000, a school building not to exceed in cost $10,000, and a comfortable house for the entire use of a Moravian minister and teacher.    I desire each member of said church have a lot of one acre of this land purchased at $1.00 each, as far as the land goes, and his children to be sent to school free of charge as long as any part of my estate remains to pay the expenses of said church first, then school. To be managed and controlled by the church, of Salem, N. C. It is my intention that all my estate except as before stated be used and managed by the Moravian Church, of Salem, to maintain a church and school at or near Clemmonsville, N. C., and when, if ever, abolished then to go to my nearest living relatives."

The case having been transferred, upon issues raised by the pleadings to the Superior Court, the Judge, upon facts agreed, found as a fact that, "The Board of Provincial Elders of the Southern Province of the Moravian Church, or *Unitas Fratrum,*" officially located at Salem, N. C., and a corporation under the laws of North Carolina was the trustee intended in his will by the designation "Moravian Church of Salem" and adjudged that the bequest and devise of the residue of the estate as above set forth was valid, and directed that the net proceeds of the personality after payment of the widow's distributive share, the three small bequests mentioned and the costs of administration, be paid over to said trustee, and that said trustee is the owner and entitled to the possession of all the real estate of which the testator died seized, subject to the

dower rights of the widow. From this judgment the defendants appealed, assigning the following grounds of exception, which will be noted *seriatim.*

The first two exceptions are to the findings of fact that the "Board of Provincial Elders of the Southern Province of the Moravian Church," was the trustee named. This was shown to be the official designation of the religious denomination, commonly known as the Moravian Church, with its headquarters at Salem, which is incorporated in North Carolina, and owns large bodies of land, having received *inter alia* at one time a grant of 1,000,000 of acres of land from Earl Granville, holding and investing the funds of the Province and the legal title to the Churches and Chapels and schools within its jurisdiction, including the well known and long established female college at Salem. It was also in the facts admitted that the Moravian Church congregation at Salem, owing allegiance to the Province above referred to, of which it is a member, was also incorporated, and owned considerable property, including four affiliated chapels, and is also commonly known as the Moravian Church of Salem, but it exercises no control over any property or Church beyond its immediate vicinity, and is subject to the authority of the Province of which it is a member, and from which its ministers receive their appointment. (This last corporation and its charter have been before this Court in *United Brethren v. Commissioners,* 115 N. C., 489). At the most, this was a latent ambiguity, and explainable by parol evidence. *Simmons v. Allison,* 118 N. C., 763, 776; *Asheville v. Aston,* 92 N. C., 578; *Ryan v. Martin,* 91 N. C., 464; *Tilley v. Ellis,* 119 N. C., 233. The finding of fact by the Judge to whom by consent it was submitted, is binding upon the defendants. In *Tilley v. Ellis, supra,* a latent ambiguity was sent back to be passed upon by the jury, but, as in that case, the ambiguity

was as to the *cestui que* trust, the Court added that if it could not be determined who was meant, the devise would lapse for the benefit of the heirs. *Trustees v. Colgrove,* 4 Hun., 368, and cases there cited. But here the ambiguity being as to the trustee, the Court would not allow a trust to fail for want of a trustee. Besides, it is not ground for exception to the defendants who can not be concerned who is trustee.

But when the case gets back into the Superior Court, it may be well for the administrator, for his own protection, to cause the Moravian Congregation at Salem, which is officially incorporated as the "Congregation of the United Brthren of Salem," to be made a party defendant (it is not a party to this action), that it may be bound by the final order holding the Provincial Elders of the Moravian Church to be the trustee designated, or given opportunity to contest the same if that congregation should so desire. It is a matter between the two congregations commonly known as the "Moravian Church of Salem," as to which was intended to be the trustee. This will not affect the validity of the devise or the rights of the defendants. An uncertainty as to the *cestui que* trust is fatal to a devise in trust, unless it is a latent ambiguity which can be ascertained. *Tilley v. Ellis, supra; Institution v. Norwood,* 45 N. C., 65. It is otherwise where the uncertainty is as to the trustee, in which case the Court will protect the trust and if need be appoint a new trustee. 2 Perry Trusts, Sections 730, 731.

The next two exceptions are that the Court erred in not holding that the trustee, the Moravian Church, could not hold real estate, and besides has no corporate existence. It appears from the facts agreed, that both the organizations referred to above, and both of which are commonly known as the "Moravian Church of Salem" (one being the Province, with headquarters at Salem, and the other the Congregation

of that Church in that town), were incorporated, and both have power to take and hold property, real and personal. But if there had been no incorporation, the Court would hold the fund until "incorporation could be taken out". *Allen v. Baskerville,* 123 N. C., 126; *Ould v. Washington,* 95 U. S., 303; and, if that were not done in a reasonable time, appoint a substituted trustee.

The other exceptions are to alleged error in not holding the devise for Church and School at Clemmonsville void:

1. "That the same is attempted to be given to a Church and School not in existence." In *Griffin v. Graham,* 8 N. C., 96, the will provided that two acres of land should be purchased, and "that a brick house shall be erected on said land suitable for a school room, and furnished in a plain manner for the accommodation of indigent scholars, and be called Griffin Free School". The School had no previous existence, but was to be established by the trustees. The Court upheld the trust, and the institution is still the pride of New Bern. To same effect, *White v. University,* 39 N. C., 19; *Vidal v. Philadelphia,* 2 Howard (U. S.), 127, (the famous Girard Will Case); *Ould v. Washington, supra.* In *Jones v. Habersham,* 107 U. S., 174, it is said: "The bequest, in the 23rd clause of the will, of $1,000, to the first Christian Church erected or to be erected in the village of Telfairville, in Burke County, or to such persons as may become trustees of the same, is supported by *Inglis v. Sailors,* 2 Peters, 99; *Ould v. Washington, supra; Russell v. Allen,* 107 U. S., 163, and is directly within the decisions of Lord Thurlow in *Attorney General v. Bishop,* 1 Bro. Ch., 444, of Sir John Copley, afterwards Lord Lyndhurst, in *Society v. The Attorney General,* 3 Russ, 142, and of Lord Hatherly in *Sinnett v. Herbert,* L. R. 7 Ch., 232." In fact a very large proportion of devises of this nature are to institutions to be established in conse-

quence of the will, and if sufficiently definite they have always been upheld. Certainly we know of none declared void on the ground assigned in this exception.

2. "That a church and school house are directed to be built at a cost not exceeding $10,000, thereby giving a discretion, without a person or corporation being named capable of exercising the discretion". It is evident that the discretion was to be exercised by the trustee, and this is a limitation thereon.

3. "That 100 acres of land are directed to be bought, and one acre allotted each to parties incapable of being designated, nor capable of enforcing the trust." A devise "for the establishment of a free school or schools for the benefit of the poor of the county," was held valid. *State v. McGowan,* 39 N. C., 1; *Hunt v. Fowler,* 121 Ill., 269; and "For the poor in the County of Beaufort"; *State v. Gerard,* 37 N. C., 210; to "A. Bishop, of North Carolina, and his heirs in trust for the poor orphans of the State of North Carolina, and the said Bishop and his successors have the right to select such orphans," was upheld by PEARSON, C. J., in *Miller v. Atkinson,* 63 N. C., 537; a gift to trustees "to be by them applied to the payment of tuition money for such poor children as the trustees may designate," was sustained in *Newton Academy v. Bank,* 101 N. C., 488; and the interest on the fund to be applied for the "educating of poor mutes," was treated as valid in *School v. Institution,* 117 N. C., 164. "Each member of said Church not to exceed 100," is sufficiently definite.

4. "That the will attempts to provide for the education of the children of the indefinite persons to whom the one acre of land is given." The parents being ascertainable, as above said, this exception is untenable.

5. "That the paper writing attempts to provide a house for a Moravian minister and teacher, and is too indefinite in providing who that teacher may be." The selection was evi-

dently left to the trustees, the Moravian Church, and intended to be so left, just as the trustees of Girard College, of the Griffin School, and other institutions established by virtue of a devise, select the President and Professors from time to time.

6. "That the provision reciting his intention that his etsate shall be used and managed by the Moravian Church of Salem to maintain a Church or School at or near Clemmonsville, N. C., is too general and indefinite, and fails to point out the beneficiaries, or the means by which they may be ascertained." This has been already discussed.

7. "That the said Moravian Church is not an incorporation, and is incapable of holding a trust." This is counter to the facts agreed, and need not be considered. Besides, it does not concern the defendants.

8. "That there are no beneficiaries mentioned in said paper writing sufficiently identified that can enforce the trusts." As much so as in the Girard College case, the Griffin School case, and all similar instances. In those cases, what boy could come into Court and say, "I, among others, was intended to enjoy this bounty." The trustees could answer, "In our judgment you are not best entitled to the benefit of the donation," yet such devises were upheld.

In *Sinnett v. Herbert, supra,* the Court held that "a gift to a charitable purpose, if lawful, is good although no object be in existence at the time," citing *Attorney General v. Bishop,* 1 Bro. Ch., 444, sustaining a gift for "establishing a Bishop in His Majesty's Dominions in America." In which case it was also said, "It is immaterial whether the person to take be *in esse* or not, or whether the legatees were, at the time of the bequest, a corporation capable of taking or not, or how uncertain the object may be, provided there be a discretionary power vested anywhere over the application of the testator's bounty to these objects; or whether their corporate designa-

tion be mistaken," which is cited in *Vidal v. Philadelphia,
supra,* which adds, "If the intention sufficiently appears in
the bequest, it should be valid." "In *Holmes v. Mead,* 52
N. Y., 232, it was held that a beneficiary need not necessarily
be described by name, that it is not material that a legatee
should be definitely ascertained and known at the date of the
will or even at the death of the testator; and it is sufficient, if
he is so described that he can be ascertained and known when
the right to receive the gift accrues. A provision by will that
the whole estate should be used at discretion by the selectmen
of B, for the special benefit of the worthy, deserving poor,
white, American, Protestant, democratic widows and orphans,
residing in B, is valid. *Beardsley v. Bridgeport,* 53 Conn.,
489. The whole matter of enforcing and controlling private
charities is regulated by Sections 2342 to 2345, of The Code,
whereby the Attorney General or Solicitor is authorized, on
the suggestion of two reputable citizens, to bring suit.

9. "That the power given to the trustees to abolish the
church and school makes the devise to them void." No power
is given to the trustees to abolish the church and school, and
the reference to the possible abolition thereof is merely a con-
dition subsequent, and does not prevent the vesting of the
estate. This objection was answered by PEAR-
SON, C. J., in *Miller v. Atkinson, supra.* "It will be time
enough at his (Bishop Atkinson's) death to make the objec-
tion that his successor cannot exercise the power." So it will
be time enough to discuss the effect of an abolition, if it ever
happens, at the time it takes place; but such a condition subse-
quent can not possibly have the effect of destroying the
estate.

10. "That the estate attempted to be devised is a base or
qualified fee, and is therefore void." If it be admitted to be
a base or qualified fee, it is not void in North Carolina. "But

124—33

however broad may be the language quoted, we have no idea
that it was the purpose of the Chief Justice to say that the
limitation expressly defined by him as a base or qualified fee
in Merrimon's case (55 N. C., 470) could not be valid in
North Carolina.    Such limitations are not infrequent in this
and other States, and we are not prepared to adopt a view
which leads to such a revolution in the law of limitations of
real property."    *Hall v. Turner,* 110 N. C., 292.

11. "That there are no words of conveyance conveying the
estate to any one to hold in trust, and it therefore descends to
the heirs and distributees."    No technical words of convey-
ance are required in wills.    *Allston v. Davis,* 118 N. C., 202;
Code, Section 2180.

12. "That the will does not contemplate a charity, for it
provides that only the children of each member having one
acre of the land be sent to school free of charge, as long as
any part of my estate remains to pay the expenses of said
church first, then the school, and is not in contemplation of
Section 2342, of The Code."    While the will prescribes that
such children shall be educated free, that is only a part of
the trust, which provides in addition for the maintenance of
the church and school at that point.    The charity is not too
vague and indefinite, but quite specific—for "a Moravian
Church and school at my native town, Clemmonsville, in For-
syth County, N. C., to be managed and controlled by the
Moravian Church, of Salem, N. C.," the trust is not difficult
of execution according to the intention of the testator.    He
says that it is his intention that all of his estate be used
and managed by the Moravian Church, of Salem, to maintain
the charity which he was about to establish.    Instead of him-
self naming new trustees to administer the trust, he places
this trust in the hands of that Church.    The testator himself
was a native of Clemmonsville.    He was, and had been for

fifty years, a member of the Moravian Church at Salem, and died childless, and evidently wished through his Church to perpetuate his family name by establishing at the place of his nativity, which took its name from his family, a charity to be managed and controlled by the parent Church. Courts incline strongly in favor of charitable gifts, and take special care to enforce them. 2 Story Eq. Jur., Section 1169. Charitable bequests are said to come within that department of human affairs where the maxim *ut res magis valeat quam pereat* has been and should be applied. 2 Perry Trusts Section 687. Until the statute of distributions (22 Car. II., Ch. 13) was enacted the Ordinary was obliged to apply a portion of every intestate's estate to charity, on the ground that there was a general principle of piety and charity in every man. 2 Perry, *supra,* Section 690; 2 Bl. Com. 494, 495. This was doubtless a crude beginning of the graduated inheritance tax by which, in Great Britain and most of our States, the estates of the dead are now made to contribute to the benefit of the public.

It is contended that there are several cases in North Carolina in which charitable bequests were declared invalid. But these were very different from the one now before the Court. In *McAuley v. Wilson,* 16 N. C., 276, the testator directed that his property should be formed into a fund to pay a preacher of the Associate Seceding Party to preach at the Church of Gilead, which belonged to the Reformed Party. The Reformed Party would not allow the preacher to preach, but fastened the door and windows of the church against him. The Court said that it did not have the power to force the Church to let him preach, and so the devise failed. In *Holland v. Peck,* 37 N. C., 255, the will required the sum to be disposed of by Conference or the different members composing the same, as they shall, in their Godly wisdom, judge to be

most expedient or beneficial for the increase and prosperity of the Gospel; held too indefinite to be executed. In *Bridgers v. Pleasants,* 39 N. C., 26, the bequest was to foreign missions, and to the poor saints. The Court, with fine irony, said, that it was impossible for a Court to say that this man or that was a Saint, and the bequest was declared void, though it was careful to add that if the testator "had made it plain who *he* thought were Saints, the Court would enforce the trust." In *White v. University,* 39 N. C., 19, the Court pronounced a provision that the proceeds be laid out in building convenient places of worship, free for the use of all Christians who acknowledged the divinity of Christ, and the necessity of a spiritual regeneration, as void for uncertainty.

There are numerous cases that where the testator does not select the object of his bounty but attempts to leave it to his executors or trustees to select, the purpose or class, this is too indefinite, and the devise is void because one cannot appoint another to make a will for him. Among cases of this kind are the famous Tilden will case, *Tilden v. Green,* 130 N. Y., 29; *Bridgers v. Pleasants, supra; Johnson v. Johnson,* 36 Am. St. Rep., 104; S. C. 22 L. R. A., 179, and notes; *Gambell v. Tripp,* 15 L. R. A., 235; but that is an entirely different matter from a case where the object of the bounty, or the class out of which the individuals are to be selected, is definite, as in the Girard will case, the Griffin School case, and others cited above, in which the selection of the individuals of the class designated to share in the bounty is necessarily left to the trustee, since they might not even be born till long after the testator's death. To the latter class, the present devise belongs.

The doctrine of *Cy Pres* does not obtain in North Carolina, (*Bridgers v. Pleasants, supra*), and would have no application to the case before us, if it did, and therefore needs no discus-

sion.    That doctrine was simply that if a·trust failed for any reason the Court would apply the fund to some other charity, as similar as possible—to "somthing else as good."    Nor does the validity of charitable devises depend upon whether the Statute, 43 Eliz., Ch. 4, "Charitable Uses," is or is not in force in this State.    The opinion to that effect has been thoroughly exploded, says the United States Supreme Court in *Ould v. Washington, supra,* and further says, citing 2 Perry on Trusts,   Section 687, "A charitable   use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well being of social man."

To sum up:

1. This is a charitable use.

2. Neither the doctrine of *Cy Pres* nor 43 Eliz., 4, in anywise affects the validity of a devise for such purpose in this country.

3. A latent ambiguity as to either *cestui que* trust or trustee is explainable.

4. The latent ambiguity here being as to the trustee, if not explained, the trust could not have failed, but a new trustee would be appointed.

5. If the object of the trust were indefinite, it would be void; otherwise, where as in this case, it is definite  and the selection of the individuals to enjoy its benefit is left to trustees.

After a careful review of the elaborate argument on both sides, which has been of great assistance to the Court in drafting this opinion, the judgment below is affirmed.

Affirmed.