L. B. ALLEN v. P. ALLEN et als.

*Action for the Recovery of Land—Equitable Defences—Issues.*

1. In the trial of an action it is the duty of the Judge to submit such issues arising on the pleadings as will present the whole matter in controversy and allow the introduction of all material evidence, and on the responses to which the Court will be able to pronounce judgment on the merits.

2. Where, in an action for the recovery of land, the answer of the defendants set up equities on which substantial relief was demanded, and the plaintiff, in his reply, admitted a contract between himself and defendant's intestate for a sale of the land to the latter, and an interchange of a bond for the purchase-money and a bond for title, and averred his willingness to make title upon the payment of the bond for the purchase-money, which defendants alleged had been paid in full: *Held*, that it was not error to refuse to submit issues tendered by the plaintiff having no reference to the equities set up, but the Court properly submitted such as directed the attention of the jury to the question whether the purchase-money had been paid in full or in part.

3. Where, on the trial of an action, testimony prejudicial to the one side or the other is admitted but is withdrawn from the jury with all necessary cautions and no injury could have resulted from its introduction, a new trial will not be granted.

4. A bond to plaintiff by defendant's intestate found among the latter's papers, purporting to be for a balance due on the price of land, and containing a statement that upon its payment the payee should execute a deed to the maker, was admissible to prove payment, to the extent of the amount of the note, of an earlier and larger bond given for the price of the land, when accompanied by evidence of its presentment to plaintiff and of his declarations that the land had been paid for and that a credit indorsed on the note was a payment on the land, together with evidence that there was only one land transaction, although the description of the land in the bond so found was insufficient.

This was a CIVIL ACTION, tried at October Term, 1893, of VANCE Superior Court, before *Hoke, J.*, and a jury.

To condense the pleadings as far as practicable: The plaintiff brought his action against the widow and heirs of D. S. Allen, alleging title and seeking to recover possession of the tract of land described in the complaint. He further alleges that said land formerly belonged to one J. J. Hayes, and was purchased from him by plaintiff and D. S. Allen jointly, in 1869, for $2,000, and that plaintiff subsequently bought the interest of D. S. Allen in said land, and that, after the death of J. J. Hayes, his administratrix, at the request of D. S. Allen, executed and delivered a deed for the land in fee-simple to plaintiff, said deed having been drawn and witnessed by said D. S. Allen; and plaintiff demands judgment that he is the owner in fee-simple and entitled to immediate possession of the land, and if necessary that the heirs of J. J. Hayes be made parties and decreed to make title to him; and for such other relief, etc.

Defendants admit possession in themselves and deny that the same is wrongful; they admit the joint purchase of the land from J. J. Hayes, the death of Hayes, and the execution of the deed to plaintiff by the administratrix, but they deny her right to make a valid conveyance of the same; they aver that D. S. Allen paid at least half of the purchase-money for the land—a part of the same to the administratrix—and they deny that he sold his interest in the same to plaintiff; they aver that Allen used $1,000 of his wife's money in payment for the same, and aver that the deed was made to plaintiff that he might hold the land as security for the payment by Allen to plaintiff of the price of plaintiff's interest in the land which Allen bought from plaintiff, and that Allen in his life-time fully paid to plaintiff the said price; they claim the right to have a deed from the heirs of J. J. Hayes, or if the deed from Hayes' administratrix conveyed title to plaintiff they assert their right to a conveyance in fee-sim-

ple of the whole tract from him, and they ask that if necessary the heirs of Hayes be made parties and decreed to make title to defendants.

Plaintiff in his reply denies the payment by Allen of one-half the purchase-money with his own funds or with the funds of his wife, and denies the allegations of the complaint as to the equities set up that plaintiff holds the land in trust for them. He proceeds: "But plaintiff admits and alleges that on March 15, 1874, he contracted to sell to said D. S. Allen the said tract of land, with the stock on it, at the price of $2,944.62, and obligated himself in writing to convey the land to said Allen in fee whenever Allen should pay to him said sum, with interest thereon at the rate of eight per cent. per annum from the first day of January, 1875; and plaintiff further avers that on said March 15, 1874, said Allen executed and delivered to plaintiff his (said Allen's) bond, whereby and wherein he promised to pay to plaintiff the said sum and interest as aforesaid for said land and stock," describing the land and offering to produce the bond. "And plaintiff says that he is now willing and has at all times since the execution of said bond by himself and D. S. Allen been willing and ready to convey to Allen in fee said tract of land upon his paying to him said sum of $2,944.62 and interest as aforesaid."

Defendants denied the execution of the $2,944.62 note and bond, and alleged that if said note and bond were ever executed the same has long ago been paid and satisfied.

After the pleadings were read the plaintiff tendered the following issues, and excepted because the same were not submitted to the jury:

"1. Is plaintiff the owner in fee and entitled to possession of the land described in the complaint?

"2. Are defendants in the unlawful and wrongful possession of the land, and do they wrongfully withhold possession from plaintiff?

"3. What damages has plaintiff sustained by reason of defendants' withholding the possession from plaintiff?"

Defendants also tendered issues which were not submitted, and his Honor prepared numerous issues, as apparently necessary from the pleadings, and stated that he would proceed with the trial of the cause and frame the issues later on, or when the evidence was in, and which appeared then to be required. There was no objection to this course.

The plaintiff proved the handwriting of D. S. Allen, and offered in evidence the following bond:

"$2,944.62. With interest at eight per cent. from the first day of January, 1875, I promise to pay L. B. Allen twenty-nine hundred and forty-four dollars and sixty-two cents, it being due for land and stock, etc., said land lying and being in the county of Franklin, and situated on either side of Lynch's creek, adjoining the lands of J. W. Young, Paul Jenkins and others, and containing three hundred and forty acres, more or less.

"Witness my hand and seal, March 15, 1874.

"D. S. ALLEN, [Seal.]"

Upon which were indorsed many payments.

The plaintiff then offered in evidence a bond of L. B. Allen to D. S. Allen, dated March 15, 1874, to convey land as follows:

"This obligates me to render to D. S. Allen a lawful deed to a certain tract of land in Franklin county, on Lynch's creek, on which D. S. Allen now resides, when he

shall liquidate a bond of $2,944.62 which I have of this date given for said land, etc., and describing said land.

"Given under my hand and seal, March 15, 1874.

"L. B. ALLEN, [Seal.] "

The witness, L. B. Allen, on cross-examination, said he had the above bond in his possession in May, 1892, and brought it to Henderson and had same registered, and paid fees for it.

On re-direct examination plaintiff's counsel asked witness how the bond above mentioned came into his possession, intending thereby to show a transaction between witness and D. S. Allen, who is dead.

Defendants' counsel objected to the question. Objection sustained, and plaintiff excepted.

The witness testified that the body of the bond was in the handwriting of D. S. Allen, and that it had no subscribing witness.

Plaintiff's counsel proposed to prove by this witness that the land referred to in the bond for title was the same land described in D. S. Allen's obligation.

Defendants objected. Objection sustained, and plaintiff excepted.

The witness testified that a fair annual rental value for the land was $250.

The plaintiff then introduced a deed from Arabella Hayes, administratrix of J. J. Hayes, deceased, dated 12th November, 1874, to L. B. Allen, for the land in dispute, but not necessary to be set out.

The plaintiff here rested his case, and the defendants introduced evidence as follows:

Mrs. R. P. Cook: "I am a daughter of J. J. Hayes; he died 9th April, 1872; knew Mr. D. S. Allen very well; did not know L. B. Allen very well; knew about the land trade."

The J. J. Hayes bond was shown to witness by defendant and identified by her.

Plaintiff objected to the evidence of Mrs. Cook tending to show how or in what manner or in what proportion the Allens had made the original payments for said land prior to the execution of the deed from the administrator of Hayes, contending that by the execution of the $2,944.62 bond the defendants were estopped from questioning plaintiff's title.

The Court held that this would be a correct position if the execution of the bond were established, but if such execution were not established the evidence would be pertinent on the third and fourth issues, as then prepared.

Evidence admitted for this purpose, and plaintiffs excepted. Plaintiff excepted to the evidence offered on the same ground, whenever offered in case in evidence of J. J. Hayes and of Gill, and wherever offered.

Mrs. Cook then testified at length as to the purchase of and payment for the land by plaintiff and D. S. Allen, and as to declarations of plaintiff to the effect that Allen owned half and was going to buy the other half of the land from him.

D. H. Gill testified for defendant: " I showed plaintiff the note dated March 22, 1874. He said the note was all right, and was given for the purpose it expressed; also said same about the payments, and said note was all right. He said this note was taken up and the note for $2,944.62 given in its place; and after I called his attention to the fact that the note for $2,944.62 was the oldest he asked for the note. He and his wife then went out, and when he came back he denied knowing anything about the note. I was administrator of D. S. Allen, and had gone to plaintiff to see him about the matter. I am a brother of D. S. Allen's widow; I know Burroughs Allen very well; my

brother married Burroughs Allen's sister. I heard Burroughs Allen say he had no interest in the home place here in litigation; that he had been paid for it by his brother, D. S. Allen. This was in the court-house at Oxford. I live three miles from Mark Allen's; he made good crops at first. In 1885 he commenced teaching his children, and rented his land and made very little. D. S. Allen lived on this land from 1870, when he came there, till he died. D. S. Allen's wife had an interest in Hight's estate. He never bought any other tract of land in Franklin county but this."

On cross-examination: "D. S. Allen's personal property was under mortgage at the time of his death. I heard L. B. Allen admit, in 1877 or 1878, that he had been paid up."

The bond under which plaintiff claims title was exhibited, and witness says that he does not believe the credits are in D. S. Allen's handwriting. "I think they were all put there at the same time; looks like it."

On re-direct examination says: "D. S. Allen's habits were economical; he made money farming until farming became unprofitable."

Defendants then offered in evidence the bond for $1,544.68, dated March 22, 1874, as pertinent evidence in the case, since the witness had testified to plaintiff's declarations about it.

Plaintiff objected to admission of the bond and indorsements thereon:

1. Because it is a declaration of D. S. Allen in his favor.

2. Because no land is described therein.

3. Because irrelevant and immaterial.

Objections overruled; plaintiff excepted. The bond was then read:

" $1,544.68.   With interest from the first day of January, 1875, I promise to pay L. B. Allen fifteen hundred and forty-four dollars and sixty-eight cents, it being balance due for one-half in a certain tract of land in Franklin county, sold me in 1870, and for money lent for various purposes.   The conditions of the bond are that, when satisfied, the said L. B. Allen shall render to me a lawful and warranty deed to the land mentioned above.

" Given under my hand and seal, March 22, 1874.

"D. S. ALLEN, [Seal.] "

There are indorsements on said bond, as follows:

" Received December 10, 1874, ($220) two hundred and twenty dollars on the within."

" Received June 20, 1875, $280 on the within bond."

" Received February 26, 1876, ($167.70) one hundred and sixty-seven dollars and seventy cents on the within."

" Received on the within bond, December 23, 1876, ($500) five hundred dollars."

In talking to the plaintiff about the credit of $280, first credit on the $1,544.68 bond, witness said he asked L. B. Allen if he had bought his brother D. S. Allen's interest in his father's land.   He said he had.   Asked him if he ever paid his brother for this interest, and he said, ' No, it went into the settlement about this tract of land in dispute.'   We were talking about this $280."

Plaintiff excepted to this evidence as immaterial.   Overruled ; exception.

Defendants offered in evidence the deed or contract by which D. S. Allen sold his interest in his father's estate to L. B. Allen for $280, about which the witness Gill testified being same date as credit on the bond.

Plaintiff objected, not to the execution of this contract, but because same was irrelevant and immaterial.   Objection overruled, and plaintiff excepted.

The paper-writing was as follows:

"For the consideration of the sum of two hundred and eighty dollars, the receipt of which is hereby acknowledged, we do herein grant, bargain, sell and convey to L. B. Allen all our right, title and interest to and in every kind and description of property whatever, whether of land, money, or aught else, we have and did inherit by will of James Allen, deceased, to have and to hold, to him and his heirs and assigns forever.    Given under our hands and seals, January 20, 1875.                    "DEMARCUS ALLEN,

"PAMELIA J. ALLEN.

"Attest: ERASTUS E. ALLEN."

The above contract was duly proven and registered in Granville county, 20th of April, 1875.

James A. Gill: "I am a brother of the defendant Pamelia Allen and brother-in-law of the plaintiff. I heard the plaintiff say in Oxford the land in controversy was D. S. Allen's. He had sued plaintiff for his wife's share in her father's estate, and he claimed this land as a part of it. Plaintiff said he had no interest in the land whatever; it belonged to D. S. Allen." At another time witness said he went to see the plaintiff and D. H. Gill. D. H. Gill handed the plaintiff the $1,544.68 note exhibited and some other notes. Plaintiff took the notes and examined them carefully, and said they were all right. The plaintiff claimed that the $1,544.68 note was taken up and the $2,944.62 note taken in its place. In reading it found the larger note was dated first. He was then asked how he accounted for that, and he then said he didn't know anything about the $1,544.68; said this after going out and talking over the matter with his wife. I asked plaintiff how he happened to make the $2,944.68 note so large if it

9

was for only for half the land, and asked him if anything else was in it; said there were other things—there were some horses and supplies; that he, plaintiff, had originally put in more than D. S. Allen. Plaintiff said he had sold land to Allen at what it cost him. When witness and D. H. Gill were leaving plaintiff said the $1,544.68 note was all right, but he was not prepared to say how it was. His attention was called to the $280 credit, the first on the $1,544.68 bond, and he asked plaintiff if he was paid any money. Plaintiff said, ' No, it was in the settlement about the tract of land in dispute.' Mark Allen farmed at first as long as it was profitable, and did very well as long as it paid. He also taught school. He was sober, steady and attentive to his business, and as economical as any man in my community."

*Cross-examined.*—"L. B. Allen lived in Granville county, twelve miles from Mr. Hayes direct; sixteen miles by road. D. S. Allen lived half the distance. In conversation was talking about the Mark Allen place. James Allen was the father of the plaintiff. In the suit I claimed the Mark Allen place because I had heard the money of James Allen's widow went in part payment of the Mark Allen land. L. B. Allen admitted he had used a part of the money of James Allen in buying Mark Allen's place. I went with D. H. Gill, administrator of D. S. Allen, to L. B. Allen because L. B. Allen was claiming the $2,944.68 bond against D. S. Allen, and the administrator had found the $1,544.62 bond, and D. S. Allen had no deed. I don't know why, if the bond was paid, D. S. Allen should have drawn · deed direct to his brother. L. B. Allen made a careful examination of the $1,544.62 note before saying it was all right. He claimed that the $1,544.62 bond had been taken up and the $2,944.68 bond given in its place; then when the dates were called to his attention, showing

ALLEN *v.* ALLEN.

the $1,544.62 bond the latest, he said he didn't know how it was. He exhibited the $2,944.68 bond and claimed this was the bond now held for the land. D. S. Allen lived on this land from 1869 to his death."

On re-direct examination he said: "In 1874 land was in Franklin county. This is the only land trade between the brothers for land lying in Franklin county."

W. H. P. Jenkins: "Married sister of the plaintiff and D. S. Allen. I am Superintendent of Public Instruction in Granville county. I have known L. B. and D. S. Allen for fifty years. I was a party to suit for an accounting in estate of my wife's father's land, James Allen. In March, 1875, Mr. L. B. Allen told me in Franklinton that the tract of land in Franklin, where D. S. Allen lived, belonged to him (D. S. Allen). I was contending that the farm in controversy belonged to James Allen's estate, and plaintiff said it belonged to D. S. Allen. I think he said it again. I was also present at conversation spoken of by the Gills, but didn't hear it; I was talking to some one else. D. S. Allen was a man of high moral character, but I don't know his economic habits."

On cross-examination said: "D. S. Allen once owed me a debt, and it was paid by L. B. Allen."

On re-direct examination: "Both went to the war. The debt paid me by L. B. Allen was for teaching. L. B. Allen managed his father's estate. L. B. Allen is a man of industry and judgment."

Dr. R. J. Gill: "I am first cousin to Mrs. Pamelia Allen, and was the family physician of D. S. Allen; was socially well acquainted, and saw him every day. He was one of the best farmers in the county. I had a gin, and in 1877 I ginned twenty-three bales of cotton for him; ginned twenty-one bales the next year. He also carried cotton to another gin—about as much—the same years. He was an

economical man in dress and living. His wife did the sewing and cooking for his family. I was very intimate with him; I never knew of any other land trade in Franklin; it was the only land he had then, or they had any transactions about."

(Plaintiff objects to this evidence. Overruled, and plaintiff excepts).

"The $200 note was found in a table drawer in his parlor, where they found his other papers; $750 note found at same place; $1,544.68 bond was found at same place, and the bond of Hayes found at same place."

On cross-examination said: "D. S. Allen quit farming toward the last, and went to teaching school."

Mrs. J. A. Gill: "I am a sister of the plaintiff and D. S. Allen. I was married in November, 1872. In 1870 or '71 was with D. S. Allen. I lived before that at my home in Granville county. We met to settle James Allen's estate, and the interest of each was $280, and Mark Allen said, in presence of L. B. Allen, in a close, small room, where all were sitting around, that his $280 went in payment of his place. This was the only land trade that ever took place between them."

On cross-examination: "There might have been another trade, but I lived in the same house with D. S. Allen, and knew of their dealings, and this was all ever mentioned by them."

P. A. Bobbitt: "I live in Vance county, and D. S. Allen listed the land for taxes."

Mrs. Pamelia Allen: "I am the widow of D. S. Allen. He died October 24, 1891. We were married March 7, 1872. We moved to the land in 1872, and myself and husband lived on the place from 1872. He farmed until seven or eight years before his death; then he taught school. For many years after his marriage he was a very successful

farmer.    There was no other land trade between the broth-
ers except as to this particular land in controversy."

.Defendants closed.

Plaintiff then introduced Mr. A. D. Wester : " Lives in
Franklinton; knew D. S. Allen, lived in two miles of
him.    I was one of the appraisers who set apart his exemp-
tions.    This was in January, 1887.    D. S. Allen, at that
time, said he made no claim to any land."

On cross-examination : " D. S. Allen didn't say he didn't
have a deed ; said he didn't claim any land.    Mr. Finch
and Mr. Woody were the other jury to lay off homestead.
There was a small excess.    I never heard of any sale."

W. A. Woody : " I live in the southern part of county.
Was present at laying off of homestead.    D. S. Allen said
he didn't claim any land.    Mr. Finch was rather the fore-
man of jury of view and did most of the talking.    There
was no sale of land."

Mrs. L. B. Allen : "I am the wife of L. B. Allen.    Was
married March 4, 1880.    Mr. Allen then lived in Granville
county the first year of our marriage.    We then moved to
Franklin county, five miles from Louisburg.    I knew D. S.
Allen and know his handwriting.    The bond for $2,944.62,
dated March 15, 1874, is shown ; says she thinks it is in
D. S. Allen's handwriting, and the credits on same, 1, 2, 3,
4 and 5, are also in his handwriting.    Credit December 22,
1879, is also his; also December 10, 1880; April 4, 1881,
was written by witness; December 15 was his; March,
1883, was his.    She had a conversation with D. S. Allen
January 4, 1877."

Defendants objects to this conversation because witness
is interested in event of action.    Overruled, and defendants
except.

Court holds the result, in case of recovery, would be
personalty, and so she would not be interested.

"In 1887, D. S. Allen asked me to run up amount due on the bond, and I made it $3,500; that was all that was said."   $1,544.62 bond shown to witness; she said Mr. Gill brought that home within two weeks after Mark Allen's death.   "I saw the paper for the first time on that day.   Mr. Gill said he was going to be administrator, and had come down to see what L. B. Allen had against the estate.   I heard L. B. Allen tell Gill that the $750 note was all right. He had never made any payments except through his brother Mark.   I made a copy of the $2,944.68 bond at their instance and gave it to Mr. Gill.   Gill had shown the papers, and my husband said they were all right, but said he knew nothing of the $1,544.68 bond, but had a bond for $2,944.62, and plaintiff then went in to get the $2,944.62 bond.   Gill didn't present the $1,544.68 bond at first. L. B. Allen said the notes were all right, but had never seen the $1,544.68.   I kept my husband's papers, and went out with him to get the bond.   I have kept my husband's papers since 1881."   (The bond of plaintiff shown witness).   "I first saw this paper about 1887; L. B. Allen had it.   I took it, and think I put it with his other papers; I think this was the time one of the credits was put on for schooling of my daughter.   L. B. Allen didn't say the $280 had been paid, but had been adjusted in settlement.   As Gills were leaving, they asked plaintiff if he was not going to let sister have her home.   He replied, ' Business was business; he had one bond, and would hold it.' "

On cross-examination: "I never saw any money paid at time credits were entered by me.   This was the only land that was ever the subject of trade between L. B. and D. S. Allen."

On re-direct: "She only knows of transactions occurring since marriage."

Plaintiff closed.

After the close of the evidence, and before the conclusion of the argument, the plaintiff insisted, and his Honor stated, that he would submit the following issues to the jury, which he did, without objection, saying there was no evidence that would justify the jury in finding that the $2,944 bond had not been executed:

" 1. Did D. S. Allen execute to the plaintiff his bond for the sum of $2,944.62, dated March 15, 1874, as described in the pleadings?

" 2. Was said bond paid off and discharged by D. S. Allen?

" 3. If not, how much is now due and owing thereon?"

The plaintiff, in apt time, asked the Court to instruct the jury as follows:

" 1. The plaintiff having proven and offered in evidence the bond for $2,944.62, it devolves upon the defendant to prove to the satisfaction of the jury that said bond has been paid, and the Court charges the jury that there is no evidence of any payment on said bond other than the indorsements on same. Therefore, if the jury believe the evidence of the plaintiff, they must answer the second issue, No.

" 2. That there is no evidence to show that the $1,544.68 bond was intended to go as a payment on the $2,944.62 bond, and the jury must not consider it in determining how much there is due on the $2,944.62 bond."

The Court declined to give the foregoing prayer for instructions, and the plaintiff excepted.

On the close of the evidence the Court, having settled the three issues as shown in the record, stated to the jury the conditions of the different parties leading up to these three issues, and then further charged the jury that there were only three issues necessary to determine the controversy between these parties, all of them addressing themselves to the execution and payment of the $2,944.62 bond for the

land in controversy, bearing date 15th March, 1874; that it did not matter what was the original interest of the two Allens in the land, or what relations they respectively bore to it, nor how much either had paid on it; that the deed of Mrs. Hayes, administratrix, placed the legal title to the land in plaintiff, L. B. Allen, and that being true, if D. S. Allen, the ancestor of defendants, and under whom defendants claimed, had agreed to buy the land from him and executed the bond to him of 15th March, 1874, to amount of $2,944.62 for land and stock, that the law would not deprive L. B. Allen of the title until such bond was paid up; that there was no evidence that would justify the jury in finding said $2,944.62 bond was never delivered, and that if the jury believed the evidence they would answer the first issue, "Yes," and the controversy really turned on whether the bond had been paid off or not, and if not, how much was due thereon; that on the second issue the burden was on the defendants; that the defendants, who claimed that the $2,944.62 bond had been paid, were required to prove it by the greater weight of evidence, and the jury should consider the evidence under that rule to guide them, and say whether or not the bond had been paid off, and if it had not, in answer to the third issue they should say how much was still due thereon. The Court here adverted to all the evidence pertinent to this issue, including the evidence of the $1,544.68 bond, and the admission of L. B. Allen concerning same, and the credits indorsed on same, including the credit of $280, which had been shown to be the amount coming to D. S Allen from his father's estate, and which had not been otherwise paid. as defendants contended. The Court did not advert to the evidence of Mrs. Cook as to the original payment, in terms, nor otherwise allude to the same in the charge, except in so far as such evidence was excluded by first part of the

charge and by the statement of the Court when same was admitted.

Plaintiff excepted to charge as given.

The jury answered the first issue, " Yes," the second issue " Yes," and the third issue " None."

The Court signed the judgment set out in the record.

Plaintiff moved to set aside the verdict.   Motion denied. Plaintiff then moved for a new trial upon the ground of the several exceptions taken in the course of the trial, the refusal of the Court to charge as requested, and to the charge as given.   Motion denied, and plaintiff excepted and appealed.

*Messrs. E. W. Timberlake, F. S. Spruill* and *T. M. Pittman,* for plaintiff (appellant).

*Messrs. C. M. Cooke, A. C. Zollicoffer* and *T. T. Hicks,* for defendants.

MacRae, J.: It is the duty of the trial Judge to submit to the jury such issues, arising upon the pleadings, as will present the whole matter in controversy between the parties and will allow the introduction of all material evidence, the responses to which will enable the Court to pronounce judgment upon the merits.   See cases cited in Clark's Code, 2 Ed., sections 395 and 396.   It appears by the pleadings that the simple questions of ownership and possession are not the only matters necessary to be passed upon by the jury. The defendants set up equities upon which they demand substantial relief.   In his reply the plaintiff distinctly admits the contract of sale between himself and D. S. Allen, the bond for $2,944,62 executed to plaintiff by D. S. Allen, and the bond for title given by plaintiff in consideration thereof; and he avers the non-payment of the purchase-money by Allen, and the plaintiff's readiness to make title

according to his bond upon said payment. The defendants
deny the execution of the bonds and aver that if they were
executed they have long since been fully paid. There was
no dispute as to the location or description of the land.
The heirs of J. J. Hayes were not made parties.

The issues presented by the plaintiff had no reference to
the equities set up and admitted the right of the defend-
ants to the possession and a title if the purchase-money
had been paid; therefore it was proper for his Honor to
refuse to submit them. To dispose of the question of issues
now: His Honor went to the true controversy between the
parties. There being no evidence on the part of defendants
to contradict that offered by the plaintiff as to the execu-
tion of the bond for title and the bond for the purchase-
money, without objection by defendants, who were the ones
to complain if there had been any cause, his Honor elimi-
nated all else and directed the attention of the jury to the
question whether the purchase-money had been paid in
full or in part; for upon these questions alone depended
the judgment of the Court as to the right of possession of
the land; the legal title had been ascertained to be in the
plaintiff, the relief was not to be a judgment for possession
and damages, but as to the equitable rights of the parties.

The second exception relied upon is as to the incompe-
tency of the testimony of Mrs. Cooke and other witnesses
concerning the contract between Hayes and the plaintiff
and Allen, upon the ground that the relation of vendor and
vendee between the plaintiff and Allen being established,
any evidence as to prior transactions between them was
irrelevant, in the absence of allegations of fraud. The case
was complicated by the complaint and answer referring
largely to these prior transactions, and it turned out that
the admissions in the reply simplified the controversy; but
in the limited time allowed for trial of cases at *nisi prius* it

is not always an easy task to elicit the true issues from the pleadings until they are made clear by the testimony and admissions on each side. If testimony is admitted which is in its nature prejudicial to the one side or the other, and is not withdrawn from the jury with all necessary cautions, a new trial will follow the error. But where no injury could have resulted from its introduction it does not follow that a new trial will be granted.

His Honor promptly announced to the jury, when he presented the true issues to them, "that it did not matter what was the original interest of the two Allens in the land, or what relations they respectively bore to it, or how much either had paid on it," that if they believed the evidence they should respond to the first issue, Yes. He could not more effectually have withdrawn the objectionable testimony from them, and we must assume that they were at least men of ordinary intelligence.

The third exception is to the introduction of the note for $1,544.68 and the testimony of D. H. Gill and J. N. Gill in relation thereto. If the only evidence in regard to this note or bond had been that it was found among the papers of D. S. Allen after his death, it could not have been received in evidence against the plaintiff, for there was nothing which connected it with the plaintiff, no entry upon it in his handwriting, and it would have been (as was contended by the counsel for plaintiff) a declaration in his own favor by D. S. Allen in the absence of the plaintiff, and in this view it would have been entirely inadmissible. But defendants contended that this note was given in some way in part payment of the note for $2,944.62, and they offered evidence of its presentment to the plaintiff and his explanations and his declarations that the land had been fully paid for; they relied upon the dates of the two notes to show that the $1,544.68 had been given subsequently to

the $2,944.62 note, and the evidence offered to show that
the plaintiff admitted that the $280 credit upon the lesser
note was a payment by D. S. Allen on the land.     The
dates of the credits upon these notes were also relied upon
as circumstances to strengthen the defendant's contention.
These, and other testimony offered to connect the two notes,
constituted some evidence competent to go to the jury to
establish the defendant's contention.     It was not now an
effort to establish a parol trust in plaintiff, which might
have required a higher degree of proof, but it was simply
to make good the plea of payment of the $2,944.62 note
given for the purchase-money of the land.

Another objection to the admission of the $1,544.68
sealed note or bond in evidence was that there was no suffi-
cient description of the land in it, and therefore that it was
void as a bond for title.     But it was not signed by the
plaintiff, and if this clause in the bond had been omitted,
still the bond would have been admissible in connection
with the other testimony above referred to, offered for the
purpose of connecting it with the larger bond.     The bond
for title relied upon by the defendants was that made by
the plaintiff on March 15, 1874, and admitted by him.     It
was in evidence that there was but one land transaction
between the plaintiff and D. S. Allen, and the offer of the
note for $1,544.68 was not made to establish the contract
of sale, but to set up a credit upon the larger note.     In this
view we hold that the defective description did not affect
the competency of the note as evidence for the purpose for
which it was offered.

The fourth exception is as to the admissibility of the
deed or contract by which D. S. Allen sold to the plaintiff
his interest in their father's estate for $280, which plaintiff
contends was irrelevant.     As we understand it this was
offered in connection with testimony as to admissions of

the plaintiff that this sum had been appropriated by him in part payment of D. S. Allen's indebtedness to him upon the land, and in this view it was competent.

The fifth and last exception relied upon by the plaintiff is the refusal to give the instructions prayed for by him, as set out in the statement of the case. In other words, that there is no evidence that the $1,544.68 note was intended to go as a credit upon the $2,944.62 note, which was found to have been given for the land. We have already adverted to the testimony relied upon by the defendants to connect the former with the latter note or bond, and have indicated our opinion that there was some evidence proper to be submitted to the jury upon this contention; and for the same reason we concur in the view taken by his Honor in refusing the prayer for instructions. There is                                  No Error.