R. H. SIMMONS, et al., as Trustees of the African Methodist Episcopal Zion Church v. ALEXANDER ALLISON, et al.

*Action, Nature of Determined by Body of Complaint, not by Prayer—Religious Societies—Right to Church Property—Action by Trustees—Deed—Misnomer of Grantee—Latent Ambiguity.*

1. The nature of an action is not determined by the prayer but by the body of the complaint, a party being entitled to receive any relief which the *allegata* and *probata* entitle him to ask for.

2. Where a complaint alleges that plaintiffs are the lawful trustees of a church and entitled to the use and management of the church property; that defendants claim possession of the church as trustees and withhold its control from the plaintiffs, and prays that the plaintiffs, as the lawful trustees, be let into possession of the property and be protected in its management, and that the defendants be restrained from interfering with the plaintiffs in the discharge of their official duties as trustees; and it further appears that neither set of trustees is in exclusive possession, but that the property is, by agreement, in the hands of a stake-holder; *Held,* that such complaint must be considered, not as a complaint in an action of ejectment, but as an application for an injunction to determine the rights of the parties as trustees and to restrain an unauthorized body from interfering in the discharge of certain duties. (FAIRCLOTH, C. J., dissents.)

3. In an action to determine the rights of the plaintiffs as trustees of a church (Clinton Chapel) it appeared that the church had been organized as a branch of the African Methodist Episcopal Zion Church, and for 28 years had sent delegates to and had received ministers appointed by the conference of that connection, had conformed to its discipline and had paid the charges assessed by the conference, and the minutes of the District and Annual Conferences of the African Methodist Episcopal Zion Church showed that Clinton Chapel, the church in question, had been continuously represented and its name borne on the conference roll since its organization; *Held,* that Clinton Chapel must be considered as belonging to the African Methodist Episcopal Zion Church, and trustees elected in the manner prescribed by the Discipline of that connection are the lawful Trustees of Clinton Chapel and entitled to manage its property and affairs.

SIMMONS *v.* ALLISON.

·4. A deed to a corporation is valid, though there is a mistake or omission in the title, if it can be shown what corporation was intended ; hence,

·5. Where a deed to the original trustees of a church was to the " Trustees of the African Methodist Church," and it is shown that they were in fact members of the " African Methodist Episcopal Zion Church," that there is no such organization as the " African Methodist Church," and that the property conveyed by the deed had been used, known and recognized for 28 years by the bishop, conference and congregation as the property of the African Methodist Episcopal Zion Church; *Held,* that, in the trial of an action by the Trustees of the African M. E. Zion Church to obtain control and management of the property, it was competent to explain the latent ambiguity and to show that the Trustees of the A. M. E. Zion Church were the intended grantees.

·PETITION by defendants to rehear case between same parties, decided at February Term, 1895, of the Supreme ·Court, by a *Per Curiam* judgment, without written opinion, affirming the judgment rendered for the plaintiff by *Graham, J.,* at March Term, 1895, of MECKLENBURG ·Superior Court. The essential facts are stated in the opinion of Associate Justice CLARK.

*Messrs. Maxwell & Keerans* and *Clarkson & Duls,* for ·petitioners.

*Messrs. Burwell, Walker & Cansler* and *Geo. E. Wilson,* ·contra.                                          ＼

CLARK, J.: This is a petition to rehear a f·rmer decision of this court in this case, which is a controversy between the trustees of a church, the plaintiffs complaining that they constitute the majority of the lawful trustees, the minority of the lawful trustees having illegally ·associated the other defendants with them. The defendants contend that they are the lawful trustees. Each board ·claims that its pastor should officiate.

Some confusion of ideas has been brought about on the argument by an effort to treat this as an ordinary action of ejectment, and to give the parties who are accidentally defendants (made so for the purpose of having them restrained from interfering with the pastor and board of trustees previously officiating) the benefit of not having to prove title and to throw that burden on the plaintiffs. A careful examination of the pleadings will show that there is not a single feature of an action of ejectment in the case. It is in every respect an injunction proceeding, to restrain an unauthorized body from interfering in the discharge of certain duties. Both parties are admittedly members of the congregation; neither pleads that it is in exclusive possession. Both admit that at the time the action was brought the church was in the exclusive possession of neither, but by agreement was in the hands of a stake-holder, " to hold as the agent of all the parties " until the rights of these contending parties to control and manage the property for the whole congregation and to recognize the pastor could be passed upon. An agreement was made on the 10th of September, 1894, and signed by both parties as follows : "Whereas a difficulty has arisen between certain of the trustees of the African Methodist Episcopal Zion Church in regard to the possession of the property, now it is agreed that Z. T. Smith, as sheriff, as the agent of all parties concerned, shall take possession of the property and hold the same as the agent of all the parties, until Thursday, the 13th of September, 1894, and such other or further time as may be agreed upon hereafter, without prejudice to the rights of any of the parties contending therefor." On the 13th of September all the parties again signed an agreement, " The above agreement by consent is continued in force until the matter is settled by the civil courts." This action was begun on the 15th of September, 1894, five

days after the signing of the first-named agreement. At
that time both parties were in possession through their
common agent, neither side more than the other, and both
sides agreeing that the controversy was between them as
" trustees of the African Methodist E. Zion Church," and
that Z. T. Smith should hold it for all of them as such
trustees. In the answer filed by the defendants on the
29th of September, they again recognize and reaffirm this
agreement, asking in their prayer for relief that the prop-
erty remain in the possession of Sheriff Smith, " according
to the aforesaid agreement," which is set forth as Exhibit
" C," and in an exception taken to the order of the judge con-
firming a report of Sheriff Smith, who had been appointed
receiver by the court, the defendants again refer to this
agreement of September 10th, and rely on it. Nor do the
plaintiffs in their complaint set out a cause of action in eject-
ment. The complaint alleges the organization of the church
at Clinton Chapel in 1866, and its membership in the organ-
ization known as the African Methodist E. Zion Church,
which is divided into episcopal districts, &c., and its receiv-
ing its pastors ever since its organization from said African
M. E. Zion Church, and its representation by delegates in all
the church conferences of that church ; that on the 8th of
September, 1894, just before this action was brought, the
defendants' claiming to be trustees, forcibly withheld the
use of the church from the pastor previously recognized,
R. H. Simmons, and that by reason of such unlawful con-
duct of the plaintiffs the lawful trustees cannot " perform
their duties as trustees to said congregation in respect to
said property and have it in proper condition and readi-
ness for religious worship." That the defendants claim
the possession of the church as Trustees and withhold its
control from the plaintiffs who are the lawful Trustees.
That the alleged election of the defendants as trustees was

illegal except as to two of them, and that the defendants are "interfering with the plaintiffs in their proper and regular discharge of their duties, to the great injury and scandal of the said church and its congregation." The prayer is that the plaintiffs, as lawful trustees, be let into possession of the property of said congregation, and protected in their management of it, and that the defendants be restrained from interfering with the plaintiffs in the discharge of their official duties as trustees, and from attempting themselves to act as trustees, and for a receiver if deemed necessary. The nature of an action is not determined by the prayer, but by the body of the complaint. A party may demand the remedy, which the *allegata* and *probata* entitled him to ask for. Judged by that criterion, this is not an action for possession, notwithstanding the prayer for such relief. *Harris* v. *Sneeden*, 104 N. C., 369; *Jones* v. *Mial*, 82 N. C., 252. The answer denies that Clinton Chapel was ever an integral part of the African M. E. Zion Church, and avers that on the 8th of September, 1894, the pastor, Simmons, with some others, undertook to take charge of the church and prevent the defendants, the lawful trustees, from exercising their duties, they being in control as officers of said congregation. That, legal proceedings being imminent, the agreement of September 10th, above set out, was entered into by both parties, by which Z. T. Smith was put into possession, and the prayer is that the plaintiffs be restrained from interfering with the defendants in the discharge of their duties, or the congregation in its enjoyment of its rights and privileges.

It will thus be seen, as has been said, that there is no element of the action of ejectment in the case, neither in fact nor technically. The controversy is, as the agreement between the parties sets it out, " a controversy

between the trustees." The complaint does not allege possession in the defendants nor ask that they be put out. The answer admits the agreement, set up in the complaint, that the possession of the property is in Z. T. Smith, holding for all parties. The plaintiffs and defendants all agree in their pleadings that the *cestuis que trust* are the congregation of Clinton Chapel, and there is no dispute as to who are the congregation. It is one and the same body. The controversy is not over the title and possession, which are admittedly in the congregation, and no ejectment from the premises is sought. The trustees on both sides are admittedly members of the congregation. The true controversy is that the plaintiffs say they are the regularly elected Trustees to act on behalf of the congregation and to recognize the pastor sent them by the African M. E. Zion Church, with which organization the church has associated for 28 years, from its organization up to this difficulty, and they ask that the defendants be—not put out —but enjoined from interfering with the plaintiffs in the discharge of their functions as agents and trustees of the congregation. The defendants aver that they are the lawfully selected trustees and agents for said congregation, that though Clinton Chapel has acted with the African M E. Z. Church, the years stated, it was not an obligatory and binding membership, but a voluntary connection which could be discontinued at will, and in their turn they ask that the plaintiffs be restrained from interfering with them in the discharge of their official functions. It will thus be seen that possession of the property is not in controversy, as that is admitted to be in the congregation and by agreement temporarily in the mutual agent of the two boards to be held for such congregation. Nor is the title in controversy, as both sides claim under the same congregation, each board claiming to act as the agents or trustees

of said congregation. The collateral question of title raised is not the title to the property, in either the plaintiffs or the defendants, but the plaintiffs claim that Clinton Chapel, being an integral part of the large connectional system known as the African M. E. Z. Church, they could not be deposed from their trusteeship in the irregular manner in which the defendants claimed election. The latter, in their agreement of the 10th of September, had admitted that this congregation was a part of the said African M. E. Z. Church, and thrice subsequently refer to and rely on the agreement containing that admission, but pressed by the charge of irregular election they set up a new plea that the congregation and church of Clinton Chapel were only tacitly, not legally, a constituent part of the African M. E. Z. Church, and that it had a right, as a sovereign, independent body, to secede and assert its rights, to elect the defendants trustees, and to refuse longer to receive the pastors sent it by the African M. E. Z. Church.

This is the meat of the controversy, and it would be malpractice to apply the technical rule of an action of ejectment to this cause, which the parties themselves correctly set out as a " controversy between the trustees of the African M. E. Z. Church." The subsequent change of front by the answer of the defendants, alleging in effect the reserved sovereignty of the Clinton Chapel congregation and its right to secede from the African Methodist Zion Church, in no wise affected the title, for both the plaintiffs and defendants claim under the same source of title, to-wit, election by the congregation of Clinton Chapel. Without the new plea, the defendants were estopped to deny the right of the plaintiff, Simmons—sent to that congregation by the bishops of the African Methodist Episcopal Zion Church—to officiate. If they could make good their newly asserted claim of the reserved sovereignty and right of secession

in the Clinton Chapel congregation, then, if, in addition, they could also prove their regular election by that congregation, they could maintain their right, acting for such independent congregation, to reject the pastor sent them by the bishops of the A. M. E. Z. Church.

Thus the controversy is not one of title or possession between plaintiffs and defendants, but as to the regularity of the election of the two contending boards, both claiming to represent the identical congregation, and whether such congregation was an integral part of the large connectional system known as the A. M. E. Z. Church, and subject to its discipline, or had been all along an independent body, recognized and known as such, but voluntarily and temporarily acting with the larger body, with a reserved right to withdraw at any time. This is the clear-cut controversy between the two boards, each admitting the ownership and possession of the same congregation, and each claiming to be its representative, and asking against the other, not an ejectment, but a restraining order against interference by the other in the discharge of their official duties.

Under the congregational system of church government, each congregation is independent and a majority governs. But the connectional system is equally recognized by the law. In that system, each congregation is simply a constituent part of a larger association, to which the individual church or congregation bears about the same relation as the township does to the State. If a faction in one of such congregations can take possession of a church building and, assimilating itself to the condition in ejectment, have imputed to itself, by virtue of its trespass, a perfect title, and put upon their former co-tenants in the congregation, or the former trustees, the burden of proving title out of the State, and all the other incidents of an action

for title and possession, it would be subversive of the first principles of justice, and an encouragement to violence, to get the vast advantage thus imputed to temporary possession, and destructive of the connectional system of church government. In probably a majority of cases, church deeds are taken by humble and illiterate men, when the church is first beginning, and these deeds are often technically defective (as in the present case) or are never recorded. The true controversy in cases like this, between fellow members or co-tenants of the same church, is not that of title or possession, for if the plaintiffs have it not, neither have the defendants. Both claim under the same title, for both claim under the possession and title of the same congregation. The true question is not one of title and possession, but which party represents the congregation. In the congregational system, that is settled by a vote of the particular congregation. In the connectional system, the question is: Which is the set of trustees elected under the rules of the denomination? But, in neither case, is the title and possession to be tried upon the principles of an action of ejectment, with the presumptions in favor of the side nimble enough to get in possession. In the present case, neither side is in possession or out of possession, and each is seeking to restrain the other. The plaintiffs, elected on the nomination of the pastor of the A. M. E. Z. Church, as required by its Discipline and as all previous boards had been, claim to be the regular official trustees. They also show that, for 28 years continuously, the congregation had recognized itself as being a part of the connectional system of the African M. E. Z. Church. The defendants, while not denying the fact of association with the African M. E. Z. Church, insist that their evidence shows that this association with the African M. E. Z. Church was voluntary and to be dissolved at the will of the congregation.

They also show that the deed in 1866 was made to the " African Methodist Church." The plaintiffs reply by evidence that there was not then and is not now any " African Methodist " church in existence; that the African M. E. Z. Church was sometimes so`.called, and, the trustees in said deed having been at the time of the execution of the deed members of the African M. E. Z. Church, that this and all the other evidence, with the conduct of the congregation for 28 years, show that the grantee in the deed was intended to be and was the " African M. E. Z. Church." This real point of controversy was thoroughly illuminated by the evidence, and could not have been misunderstood by the jury, who found the issues for the plaintiffs. In all this controversy there is nothing which calls for the application of the principles and presumptions of an action for ejectment for real estate, and the exceptions based on that view of the case are out of place.

This is a proceeding invoking the equity jurisdiction of the Court to restrain interference by the opposite party with the discharge of official duties. As evidence which party is the lawful board of trustees, and therefore entitled to the prayer for injunctive relief, and especially whether the board, whichever is the lawful one, must recognize the pastor sent to Clinton Chapel by the African M. E. Z. Church, the principal fact for inquiry is whether Clinton Chapel is an integral part of the general organization known as the African M. E. Z. Church, or is an independent, sovereign church which has been temporarily acting with the larger organization. On this disputed question of fact the contest was made. The evidence tends strongly to show that Clinton Chapel had always been an integral part of the African M. E. Z. Church, and the jury so found the fact to be. The evidence for the plaintiffs was that

the congregation was first organized in 1866 by Edward Hill, a preacher sent by the African M. E. Z. Church, and that it was organized as a part of that connection, and from that date down to the beginning of this litigation all the pastors have been ministers of the African M. E. Z. Church and annually sent by the conferences of that church, all of them being received without suggestion of opposition, and three of these pastors have been since elected bishops of that organization. The minutes of the district and annual conferences of the African M. E. Z. Church were in evidence and corroborated the statements of the bishops and ministers of that church who testified as to the unbroken succession of ministers, giving their names and years of service, sent by the African M. E. Z. Church to Clinton Chapel, and that the latter had been continuously represented by delegates in the conferences of the African M. E. Z. Church, and its name borne on the conference roll regularly since its organization in 1865 or 1866; during these years Clinton Chapel was regularly assessed for its proportion for bishops' salaries and other connectional charges, for which purpose collections were regularly taken up, as in all other churches of the same denomination. It was also shown that all the original trustees were members of the African M. E. Z. Church, and all others, down to and including these parties, were on the membership book of Clinton Chapel, which was headed "African Methodist Episcopal Zion Church," and the Discipline and hymn book of that connection had been regularly used. It was also in evidence that, in the Discipline, the church was sometimes referred to by its full title as the African Methodist Episcopal Zion Church, and sometimes as the African Methodist Church, for short, but that there was no organization in the United States styled legally the "African Methodist," though the African Methodist

Episcopal Zion Church was sometimes (as in the Discipline) referred to as the "African Methodist"; that this Clinton Chapel Church building was dedicated in 1872 as a church of the African M. E. Z. Church by one of its bishops, and with the ceremonial of that church, it being presented by the trustees in the regular form, and there was no dissent by any member of the congregation; that the trustees were uniformly, during the years from 1866 to 1894, elected by the congregation on the nomination of the pastor sent to the church by the African M. E. Z. Church, according to the requirements of the Discipline of that organization; that the lettering over the door of Clinton Chapel had been for many years past, "A. M. E. Z. Church"; these bishops and pastors and other witnesses testified that there had never been any suggestion that Clinton Chapel was an independent congregation, or was not in full fellowship with the African M. E. Z. Church, till after this trouble began in 1894; that the pastors sent by that church had always been received without objection, and that since this litigation in a collateral proceeding as to a receiver the church membership of Clinton Chapel had been consulted by order of the judge as to what pastor they would prefer the church rented, pending litigation, and 251 had indicated a preference for the pastor who had been sent by the African M. E. Z. Church and 73 a preference for the "independent" pastor, and the judge had found as a fact that this was a correct result of the ballot he had caused to be taken for his enlightenment as to the wishes of the congregation. It was also in evidence that when Clinton Chapel was first organized (by a preacher of the African M. E. Z. Church) services were held in a brush-arbor till a church was built, the greater part of the funds for which building was procured from the Freedman's Bureau through Bishop Hood, of the African M. E. Z. Church, the

balance being raised by church collections and festivals held under the pastorship of ministers sent to the congregation by the African M. E. Z. Church. The evidence is much more detailed, but this is the substance of it. The evidence offered by the defendants did not controvert much of the above evidence at all, and, as to the rest of it, the weight of evidence was for the jury, who found for the plaintiffs, and cannot be considered by us.

The defendants rested their case largely upon the ground that the deed for the church lot, executed in 1866, described the trustees as " Trustees of the African Methodist Church." The plaintiffs contended that this was a mere latent ambiguity, and that they had shown that neither in 1866 nor since had there been an " African Methodist Church" in Charlotte or in the United States, but that the African M. E. Z. Church was sometimes colloquially, and indeed its book of discipline was casually, referred to as the African Methodist. The plaintiffs also insisted, as explaining the ambiguity and the true meaning of the deed, upon the evidence showing that the trustees named in this deed of 1866 were in fact members of the African M. E. Z. Church, that all the trustees since had been members of that church and elected on the nomination of the pastor sent by that church, and that the defendants in the agreement of the 10th of September, 1894, after this controversy began, had described themselves as " trustees of The African M. E. Z. Church," and had referred to and ratified that agreement by insisting on it in their answer in this action, and that the church building in 1872 had, in the presence and with the assent of the congregation, been presented to the bishop of the African M. E. Z. Church for dedication, and that for 28 years, from 1866 till 1894, Clinton Chapel had been, without a suggestion of independency, in every way recognized by itself and

by the connection as an integral part of the African M. E. Z. Church. This evidence was competent, and that point of view was correctly submitted to the jury and passed on by the verdict.

A deed to a corporation is valid, though there is a mistake or omission in the title, if it can be shown what corporation was intended. *Asheville* v. *Aston*, 92 N. C., 578. There the deed was made to " Asheville Division No. 15," when the true name of the bargainee was " Asheville Division No. 15, of the Sons of Temperance." The court held that the ambiguity was a latent one and could be explained. A misnomer of a corporate body, when the party intended the corporation by its proper name, is not material, and its proper name may be proved by parol. *Ryan* v. *Martin*, 91 N. C., 464. Where a testator bequeathed a legacy to the " Deaf & Dumb Institute," and no person of that corporate name could be found, but persons were found by the corporate name of " President and Directors of the North Carolina Institute for the Education of the Deaf and Dumb," who were familiarly known by the former name, it was held that the misnomer was a latent ambiguity, and the bargainee being identified by evidence was entitled to the bequest. *Deaf & Dumb Institute* v. *Norwood*, 45 N. C., 65. Where a deed is made to a partnership, it was held to be good, and that parol testimony could be introduced to show who was intended as the grantee. *Murray* v. *Blackledge*, 71 N. C., 492, and the Court say in this case that " there is a latent ambiguity in the deed which can be explained." See also *Hogan* v. *Page*, 2 Wall., 605. The rule is that, as long as the interested party can be identified, any mistake in the name is not fatal to the deed. 5 Am. & Eng. Enc., 432 ; *Andrews* v. *Dyer*, 16 Atl. Rep., 405. It was competent in the pres

ent case to show that there was a misnomer in the deed and to explain that latent ambiguity. *Asheville* v. *Aston, supra.*

The case was fairly presented to the jury by the court, and was doubtless ably argued there by counsel, as it was in this Court, and the jury found for the plaintiffs. Many exceptions were taken by the defendants to the charge, but they are without merit, and it would be a needless consumption of time to go over them in detail as they are based on the incorrect assumption that this was an action of ejectment, and we have shown that it was not, but a mere equitable proceeding for an injunction, each board contending that the other was interfering with its proper control of the church, and the real question of fact being whether Clinton Chapel was a part of the greater organization known as the African M. E. Z. Church or was an independent, sovereign body of itself. This the jury found for the plaintiffs, and thereupon they were entitled to the injunction as prayed for.

His Honor might well have put the issue in that or some similar form. The responses to the 2nd, 4th and 5th issues which were submitted by both parties dispose of the controversy. That the judge also submitted the 1st and 3rd issues, which would suit rather an action of ejectment, was an inadvertence calculated to prejudice rather the plaintiffs than the defendants. But at any rate the 1st issue was not objected to on that ground, and the 3rd was submitted by consent, and, the contest having been fought out on the real issue of fact formulated by the pleadings, and this appearing from the whole tenor of the evidence and the charge, the defendants cannot complain of the submission of irrelevant issues, since they did not except on that ground in the court below. *McDonald* v. *Carson,* 94 N. C., 497 ; *Culbertson* v. *Ins. Co.,* 96 N. C., 480 ; *Cum-*

*ming* v. *Barber*, 99 N. C., 332.   Indeed the form of issues is of little importance if the material facts in controversy, as they appear in the pleadings, are clearly presented by them, and will allow the parties to present to the jury every material view of the law and the facts.   *Paper Co.* v. *Chronicle Co.*, 115 N. C., 147 ;  *Allen* v. *Allen*, 114 N. C., 121 ;  *Fleming* v. *Railroad*, 115 N. C., 676.   This judgment below has heretofore been affirmed by this Court, but as counsel for the appellant have earnestly argued for a rehearing upon the ground that technically error was committed, treating this as an action of ejectment, we have taken some pains to point out that the pleadings neither in the complaint nor answer make it an action of ejectment, and that the true controversy was as to the question whether Clinton Chapel was an independent body or a member of the African M. E. Z. Church, and upon the determination of that fact depended whether the prayer of the plaintiffs for an injunction against the defendants, or the prayer of the defendant for an injunction against the plaintiff, should be granted.   This was the only substantial prayer for relief made by either or justified by the pleadings.   On the whole case we still think, after a second and more complete investigation, that substantial justice has been done, and that the verdict and judgment below are in accordance with the law and the evidence.

Judgment Affirmed.

FAIRCLOTH, C. J. (dissenting):   I am unable to agree with the majority of the Court as to the nature of this action.   The complaint, after reciting certain church regulations, alleges that the defendants " entered forcibly into said church or chapel and took possession thereof, and that said parties have forcibly withheld possession thereof ever since."   Their prayer is, among other things, " that

they be let into possession of the property " and " that the defendants be restrained and enjoined from interfering in any way with the plaintiffs' possession and use of said property." The defendants deny the material allegations of the complaint. Much evidence was introduced, including the Carson deed to certain trustees, in trust for " the religious congregation known as the African Methodist Church in the city aforesaid (Charlotte) exclusively."

The first issue submitted was, " Are the plaintiffs ___, as trustees of the African Methodist Episcopal Zion Church, the legal owners and entitled to the possession of the premises described in the complaint?" After verdict the judgment was "that plaintiffs are the legal owners and lawfully entitled to the possession of the premises in dispute," and a writ of possession to put plaintiffs in possession is ordered to issue, and judgment against defendants for cost and damages.

I am persuaded that this is an action of ejectment, and that the purpose of the parties was to try the title of the church lot under the Carson deed. After unfriendly and bitter feelings arose between the parties, it was agreed by them and their counsel that, in the interest of peace and orderly proceeding, the sheriff of the county should take possession pending litigation. This in no way affects the gist of the action.

I think errors were committed in the course of the trial, materially affecting the verdict of the jury, and that a new trial ought to be granted. I deem it unnecessary to discuss the merits of the controversy, in its present complicated condition, as no new trial is granted by the Court.